STATE of Wisconsin EX REL. Fred BADKE, Bernice Badke, Michael T. Sullivan, Jr., Jeanne Sullivan and Richard Lennertz, M.D., Plaintiffs-Appellants-Petitioners,

v.

VILLAGE BOARD OF the VILLAGE OF GREENDALE and Village of Greendale, Defendants-Respondents.

Supreme Court

*No. 91-0126. Oral argument September 2, 1992.—Decided January 26, 1993.*

(Also reported in 494 N.W.2d 408.)

557

For the plaintiffs-appellants-petitioners there were briefs by *Elizabeth Adelman* and *Adelman, Adelman & Murray, S.C.,* Milwaukee and oral argument by *Elizabeth Adelman.*

For the defendants-respondents there was a brief by *James P Burns* and *John T. Wasielewski,* Greendale and oral argument by *James P. Burns* and *John T. Wasielewski.*

Amicus Curiae was filed by *Linda M. Clifford* and *LaFollett & Sinykin,* Madison for Wisconsin Newspapers Association and Wisconsin Freedom of Information Council.

Amicus Curiae was filed by *Curtis A. Witynski,* Madison for League of Wisconsin Municipalities.

WILLIAM A. BABLITCH, J.   A majority of the members of the seven member Village Board of the Village of Greendale (Village Board) regularly attended meetings of their Plan Commission, including four meetings at which a proposed housing project (the Sileno project) was discussed. The Village Board had ultimate decisionmaking responsibility on the project. It is undisputed that there was no intent to violate the open meeting law. Nevertheless, the question is whether their attendance at these four meetings constituted "meetings" within the meaning of Wisconsin's Open Meeting Law, thus necessitating a notice to the public of their attendance.

The Village Board asks us to affirm the court of appeals' decision that this case is moot, and, accordingly, not address any of the issues presented. Because a determination that this case is moot would thwart the purpose of the open meeting law, we decline to follow the

court of appeals with respect to mootness. We will address all issues.

We hold that when, as here, one-half or more of the members of a governmental body attend a meeting of another governmental body in order to gather information about a subject over which they have decisionmaking responsibility, such a gathering is a "meeting" within the meaning of the open meeting law, unless the gathering is social or chance. Given that a majority of the Village Board trustees regularly attended these meetings, and such attendance was anticipated by the trustees, these gatherings were clearly not social or chance. Accordingly, notice of these meetings was required.

Petitioners (cumulatively referred to as Badke) also allege that the failure of the Village Board to move the meeting at which the Village Board voted on the Sileno project to an adequately sized room to handle overcrowding or provide amplification so that all who wanted to attend the meeting could clearly hear the proceedings was a violation of the open meeting law's requirement to hold meetings "open to all citizens at all times." Given the facts, we find this claim to be without any merit whatsoever. To literally interpret the words "open to all citizens at all times" would lead to unreasonable and absurd results. These words demand reasonableness, not literal adherence. The meeting was held at the village hall which holds 55 people and has an adjacent foyer that holds approximately 20 people. At most, three people were ultimately denied entrance because of the crowd. Under the facts and circumstances presented, holding the meeting at the village hall was reasonable. There was no violation.

The relevant facts follow. Developer, Joseph Sileno (Sileno) applied to the Village of Greendale for a special use permit to construct a 364 unit apartment complex on

a 56 acre, vacant parcel of land. Under the Village of Greendale's procedures, such an application is first given to the Plan Commission for its recommendation and then to the Village Board for its final decision.

Sileno presented its proposal at four Plan Commission meetings. Advance notice of the Plan Commission meetings was provided as required under the open meeting law. The village clerk also mailed each Village Board trustee notice of the Plan Commission meetings and copies of the agendas for the meetings. The Village Board is comprised of seven trustees, two of whom also serve on the Plan Commission.

A quorum of the Village Board attended each of the Plan Commission meetings. As stated in Badke's brief:

> Prior to each of the plan commission meetings, the Village gave notice that the plan commission was holding a meeting. The Village sent the notices of the plan commission meetings to the Board of Trustees.
>
> As admitted by the Village, a quorum of the Village Board attended each of four (4) plan commission meetings at which the Sileno proposal was presented. Four (4) trustees attended the December meeting at which Sileno and its architect made a presentation and answered questions from the Village staff. Five (5) trustees attended the January plan commission meeting at which the Sileno architect made another presentation, the Village staff expressed density and traffic concerns. Plan commissioners and a Village Trustee, who was not on the commission, engaged in a discussion with the architect. Five (5) trustees attended the February plan commission meeting at which the Sileno architect described changes made to respond to concerns expressed at the prior meeting and the Village planner and commissioners commented. All seven (7) Village trustees attended the April plan commission meeting at which the Village

manager and Sileno architect made presentations, plan commissioners commented and then voted to recommend approval with a few modifications. Badke brief at 7 (citations to the record omitted).

Trustees who attended the Plan Commission meetings submitted affidavits stating that they attended the meetings as interested observers and citizens.

Subsequent to the Plan Commission's recommendation to approve Sileno's application, the Village Board met to vote on the proposal. The Village Board met for its meeting in the village hall, a facility which holds 55 people. The village hall also has a foyer that can accommodate approximately 20 people. Prior to April 17, 1990, the day of the meeting, the Village Board received a petition signed by more than 1,600 village residents opposing Sileno's plan. Additionally, a resident sent the village manager a letter asking that the village hold the meeting at another site. Police were assigned to the meeting for crowd control.

From the record, we discern that no more than three people, if that, were ultimately denied entrance into the meeting. The press attended the meeting. There is testimony in the record that some citizens who could not get into the village hall and remained in the foyer were unable to hear the proceedings, but there is also evidence to indicate that the proceedings were clearly audible in the foyer except during those times the crowd itself became disruptive. The Village Board approved Sileno's application at this meeting.

Fred Badke and other Greendale residents filed an action in the circuit court alleging that the Village Board violated the open meeting law's requirement that all meetings of local governmental bodies "shall be open to all citizens at all times." The circuit court issued a preliminary injunction to prevent the Sileno development

from proceeding. Following the issuance of the temporary injunction, the Village Board reconvened and revoted on Sileno's application in a proceeding that complied with the open meeting law. After the revote, both parties stipulated to dissolve the temporary injunction.

The plaintiffs amended their initial complaint to seek declaratory relief regarding the alleged April 17 violation and added a second claim that the open meeting law was violated by not giving public notice of a Village Board meeting when a quorum of the Village Board attended the Plan Commission meetings on the proposed development. Both parties moved for summary judgment on the two claims.

The circuit court granted the Village Board's motion for summary judgment and dismissed Badke's complaint on the grounds that the Village Board had substantially complied with the laws' requirements and that to require a "supertechnical" standard of compliance would unduly burden local governments. On appeal, the court of appeals held that the Village Board's second meeting at which it held a revote on the Sileno project mooted the controversy and that none of the exceptions to the mootness doctrine applied. We accepted Badke's petition for review.

When reviewing a grant or denial of a motion for summary judgment, we apply the standards set forth under sec. 802.08(2), Stats., which provides that the judgment sought shall be rendered only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, "even if there are no disputed material facts, summary judgment is not appropriate if reasonable

alternative inferences may be drawn from these facts: in such a situation, a trial is proper." *Ervin v. City of Kenosha,* 159 Wis. 2d 464, 478-79, 464 N.W.2d 654 (1991) (citation omitted). At oral argument, the parties agreed that there is no issue as to any material fact. Accordingly, we determine whether only one reasonable inference can be drawn from the undisputed material facts and entitle Badke or the Village Board to judgment as a matter of law.

## I.

We first discuss the issue of mootness. Badke seeks a declaratory judgment that the Village Board's actions violated the open meeting law. In its brief, before directly addressing mootness, the Village Board claims that certain prerequisites to obtaining declaratory relief have not been satisfied in this case. First, the Village Board claims that this case does not present a justiciable controversy. We disagree.

In *Loy v. Bunderson,* 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982), this court determined that a justiciable controversy must exist between the parties before declaratory relief may be obtained. Specifically, we stated:

> "There must exist a justiciable controversy—that is to say:
>
> '(1) A controversy in which a claim of right is asserted against one who has an interest in contesting it.
>
> '(2) The controversy must be between persons whose interests are adverse.

'(3)  The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.

'(4)  The issue involved in the controversy must be ripe for judicial determination.' Id. (citation omitted).

The Village Board contends that there is no existing controversy in this case, and Badke has no claim of right. Specifically, the Village Board asserts that the controversy in this case centered around the proposed Sileno project and whether such development should continue. Thus, it reasons, any claim of right Badke might have had was satisfied when the Village Board held a second valid meeting where it approved the permit for the development and allowed construction to go forward. According to the Village Board, the second meeting extinguished the controversy and Badke's claim of right.

If the granting of the Sileno permit was the center of the controversy in this case, then the Village Board's arguments might have merit. However, the existing controversy in this case involves the process, not the substance, of the Village Board's actions. The proceeding itself is at the heart of the dispute in this case, as in any open meeting law case. However, an alleged open meeting law violation usually does not concern the merits or the ultimate resolution of the substantive matter which was discussed at the meeting. The open meeting law is concerned with the process of public decisionmaking. The law's purpose is to protect the public's right to be informed to the fullest extent regarding the affairs of government. If a simple revote on the substantive matter at issue at an alleged invalid meeting extinguished a violation of the open meeting law, the purpose behind the law would be thwarted.

■

The controversies in this case are whether the Village Board violated the open meeting law by attending Plan Commission meetings without giving notice of a Village Board meeting and whether the Village Board violated the open meeting law by excluding some residents from the April 17 meeting. The sections of the open meeting law in question deal with procedure—they do not concern the merits of the Sileno project. We conclude that the revote at the second, valid meeting did not extinguish the controversy in this case or Badke's claim of right.

■

The Village Board also asserts that this case involves nothing more than a mere difference of opinion, which is not enough to make a justiciable controversy. Specifically, the Village Board claims that Badke seeks "nothing more . . . than a declaration that Respondent violated the Open Meeting Law." Village Board brief at 8. This dispute is more than a mere difference of opinion, however, in that Badke seeks to exercise his right under sec. 806.04(2), Stats., to have Wisconsin's Open Meeting Law judicially construed.[1] Succeeding on review will do more for Badke than resolve a difference of opinion. Succeeding will, as Badke suggests, teach the Village Board what to do under the law to avoid future violations. For example, if the regular attendance of Plan Commission meetings by a quorum of the Village Board

---

[1] Section 806.04(2), Stats., provides in relevant part:

POWER TO CONSTRUE, ETC. Any person interested under a deed, will written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

does in fact require notice, the Village Board will continue to violate the law if this court does not issue a declaratory judgment mandating otherwise. Furthermore, Badke has a claim of right by virtue of the authorization to seek a declaratory judgment in sec. 19.97(4), Stats.[2]

Next, relying on the same reasoning as used to explain why this case does not present a justiciable controversy, the Village Board contends that, because the valid second meeting extinguished the controversy, a judgment by this court will not have any practical legal effect upon an existing controversy, and the action is therefore moot. A case is moot when a judgment can have no practical legal effect upon the existing controversy. *Hahner v. Board of Ed. Wisconsin Rapids,* 89 Wis. 2d 180, 186, 278 N.W.2d 474 (Ct. App. 1979). This case is not moot. As explained earlier, the controversy in this case did not end when the Village Board held its second meeting. The controversy in this case is the legal status of the acts that preceded the revote, and a declaratory judgment will have a legal effect on that controversy: it will declare the legal status of the Village Board's acts. We conclude that the criteria for sustaining a declaratory action have been met, and the controversy continues despite the second, valid meeting of the Village Board. Accordingly, this case is not moot.

---

[2] Section 19.97(4), Stats., provides:

If the district attorney refuses or otherwise fails to commence an action to enforce this subchapter within 20 days after receiving a verified complaint, the person making such complaint may bring an action under subs. (1) to (3) on his or her relation in name, and on behalf, of the state. In such actions, the court may award actual and necessary fees to the relator if he or she prevails, but any forfeiture recovered shall be paid the state.

We also note that the consequences of accepting the Village Board's argument concerning mootness would be to render the open meeting law meaningless in many future cases. To dismiss enforcement proceedings on the grounds that a revote makes this case moot would invite circumvention of the policy of the open meeting law. Rather than hold open meetings, a governmental body would know it could hold secret meetings to discuss a proposal, wait until someone filed a complaint, and then hold a valid open meeting to vote on the proposal. The complaint would then be dismissed as moot. The public would never know of the information and discussion that took place at the first secret meeting which may have formed the basis for the governmental body's decision or course of action taken at the second meeting. This type of secrecy is exactly what the open meeting law is intended to avoid.

## II.

We turn now to the issue of the attendance of one-half or more of the Village Board at the Plan Commission meetings where the Sileno project was discussed and whether such attendance violated the open meeting law. The resolution of this issue requires application of the open meeting law. The application of a statute to a particular set of facts is a question of law which this court reviews *de novo. See State ex rel. Newspapers v. Showers,* 135 Wis. 2d 77, 85, 398 N.W.2d 154 (1987).

The specific question is whether, by regularly attending Plan Commission meetings regarding the Sileno project, a quorum of the Village Board held "meetings" as defined in the open meeting law such that notice of Village Board meetings were required.

The fundamental purpose of the open meeting law is to ensure the right of the public to be fully informed regarding the conduct of governmental business. The open meeting law demands that it be liberally construed in favor of open government. At the outset, we acknowledge the difficult task that public officials, such as those in this case, often face in determining the applicability of the law. In Wisconsin, there are many parttime citizen boards that work long hours for relatively little or no pay. These boards' real compensation comes from the satisfaction of public service. It is very difficult for these boards to anticipate the myriad of situations that may call into question the parameters of the open meeting law. We recognize that most public officials diligently try to abide by the law, as is surely the case here. The record and oral argument reveal that the Village Board members are hardworking and concerned about being informed so that they can vote intelligently and carry out their duties as Village Board members. Because of their conscientiousness, the Village Board members regularly attended Plan Commission meetings for the purpose of gathering information about matters over which they had decisionmaking responsibility. The four meetings at issue in this case involved the Sileno project, a matter over which the Village Board had ultimate decisionmaking authority. The Village Board's members' conscientiousness is to be commended, not criticized. Clearly, their purpose in attending the meetings was not to evade the law or to hide information from the public. Nevertheless, the question remains as to whether their attendance at these meetings constituted "meetings" within the meaning of the open meeting law.

■

We must first determine whether these were "meetings" within the meaning of the open meeting law. Sec-

tion 19.84(3), Stats., mandates that "[p]ublic notice of every meeting of a governmental body shall be given . . .", and sec. 19.84(4) mandates that "[s]eparate public notice shall be given for each meeting of a governmental body. . . ." The term "meeting" is defined under sec. 19.82(2) as follows:

> 'Meeting' means the convening of members of a governmental body for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. If one-half or more of the members of a governmental body are present, the meeting is rebuttably presumed to be for the purpose of exercising the responsibilities, authority, power or duties delegated to or vested in the body. The term does not include any social or chance gathering or conference which is not intended to avoid this subchapter.

Reading these sections together, Badke asserts that having a quorum of Village Board trustees present at the Plan Commission meetings created the rebuttable presumption that a governmental body had met for the purposes enumerated in the statute, and such gatherings were Village Board meetings which required notification. We agree.

In *State ex rel. Newspapers v. Showers,* 135 Wis. 2d 77, 398 N.W.2d 154 (1987), this court thoroughly discussed the meaning of the term "meeting" in Wisconsin's Open Meeting Law. The issue presented in Showers was whether the open meeting law applies to meetings of members of a governmental body at which less than one-half of the members are in attendance. In reaching our conclusion that in certain circumstances the law applies to such gatherings, we rejected the notion, as we had in *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 685–686, 239 N.W.2d 313 (1976), that the phrase "convening of

members" mandates that there be some type of formal convening in order for the law to be triggered.

Our opinion in *Showers* indicated that a "convening of members" occurs when a group of members gather to engage in formal or informal governmental business. We held that informal governmental action includes such things as discussion, decision, and information gathering. *Showers,* 135 Wis. 2d at 92. We set forth a twofold analysis for determining whether a gathering of members of a governmental body constitutes a "meeting" within the open meeting law and expressly stated that:

> First, there must be a purpose to engage in governmental business, be it discussion, decision or *information gathering.* Second, the number of members present must be sufficient to determine the parent body's course of action regarding the proposal discussed. *Id.* at 102. (Emphasis supplied.)

As is evident from our statements in *Showers,* interaction between members of a governmental body is not necessary for a convening of a meeting to have taken place nor is interaction necessary for the body to have exercised its powers, duties or responsibilities. Listening and exposing itself to facts, arguments and statements constitutes a crucial part of a governmental body's decisionmaking. We recognized the importance of exposure to information in *Lynch v. Conta,* 71 Wis. 2d at 686, and again in *Showers,* 135 Wis. 2d at 90 (quoting *Conta*):

> Some occurrence at the session may forge an open or silent agreement. When the whole competent body convenes, this persuasive matter may or may not be presented in its entirety to the public. Yet that persuasive occurrence may compel an automatic decision through the votes of the conference participants.

The likelihood that the public and those members of the governmental body excluded from the private conference may never be exposed to the actual controlling rationale of a government decision thus defines such private quorum conferences as normally an evasion of the law. The possibility that a decision could be *influenced* dictates that compliance with the law be met.

In this case, a quorum of trustees gathered information at the Plan Commission meetings concerning the Sileno project, a project over which they would later exercise final control. They listened to the developer's presentation, heard the developer discuss the proposal with the Plan Commission, heard the Plan Commission's views on the proposal, and heard the suggestions of the village planner. The Village Board members present could have, and in all likelihood did, reach some conclusions about the Sileno project based upon information, data and material that was presented at the Plan Commission meetings. However, because no notice was given of their attendance, the public may not have been aware of the perceived importance of these meetings to the Village Board and therefore failed to attend. Thus, the public was not made aware that information was being presented that could form the rationale behind the Village Board's action. The open meeting law is intended to allow the public access to the fullest information possible concerning the workings of government and the decisionmaking process. The public can hardly have access to this information if not made aware of its existence. Thus, even if the Village Board members did not interact at the Plan Commission meetings, their presence at the meetings allowed them to gather information that influenced a decision about a matter over which

they had decisionmaking authority. The public had a right to be made aware of the existence of this information as well. This is sufficient to trigger the open meeting law.

The Village Board next argues that the Village Board's members' attendance comes within an exception to the law in that these were chance gatherings and thus were not "meetings" under the statute. As support for this contention, the Village Board points to affidavits submitted by the members of the Board who attended the Plan Commission meetings which state that they attended the meetings as interested citizens and observers. Their affidavits also state that the Village Board members did not discuss or collude with each other or prearrange going to the Plan Commission meetings. Furthermore, the affidavits assert that each trustee's attendance at the meetings was spontaneous and independent of the fact that other village trustees were at the meetings.

If the assertions submitted in the trustee's affidavits stood alone, with no evidence to the contrary, this court may well have held that the open meeting law was not implicated because the Village Board's attendance were chance gatherings. However, the Village Board's counsel's statements at oral argument and other evidence indicate that these meetings were not chance gatherings. The evidence indicates that although, as the affidavits suggest, the trustees may not have gotten together and talked about going to these particular meetings, they did not need to confer with each other because it is the regular practice of a quorum of the Village Board to attend Plan Commission meetings. As counsel for the Village Board stated at the beginning of his argument before this court:

Justice Bablitch you asked the question about other Plan Commission meetings over the years and so forth. It's been my pleasure to be associated with the Village of Greendale for 26 years, three years of which I sat on the Village Board. There has always been in our village an interest on the part of the board members to attend the board meetings [sic] to find out what is going on and it [sic] obvious the reason that you do it—because when you go to a Village Board meeting you have a long agenda, and if your going to be able to act on a subject you want to know what was the citizens' input—that is the way we schedule our meetings. We send things to committees. The Plan Commission is a statutory commission and zoning matters go to the Plan Commission. If you want to find out in detail what is going on so you can vote intelligently the board members over the years have gone to these. Your question has [sic] would there be a majority at Plan Commission meetings over the years of Village Board members. I would say, I would think so, I would think yes because our board members over the years have always had that concern that they wanted to go to the meetings.

In response to another question concerning whether attendance is the practice of the Village Board, counsel said, "Yes, traditionally over the years, not only for Plan Commission meetings, but other commission meetings as well." In addition to these statements by the Village Board's counsel, other evidence suggests that attending Plan Commission meetings is the practice of the Village Board. For example, the clerk's office sent out notice to each board member about each Plan Commission meeting, as well as a copy of the agenda for each meeting. At the bottom of each notice of a Plan Commission meeting there is a notation that a copy was sent to the "Village trustees". Furthermore, the trustees' presence at the

Plan Commission meetings was noted in the Plan Commission minutes by their status as village trustees.

These statements at oral argument and other evidence cited indicates that the Village Board members were present at the Plan Commission meetings to carry out their duties as Village Board members. They were there to inform themselves so that they could vote intelligently at Village Board meetings. The statements at oral argument also indicate that the Village Board's members' attendance was not haphazard, irregular or spontaneous. A majority of the Village Board members got together at Plan Commission meetings with regularity—not haphazardly or irregularly—not by chance. As a result of this practice, Village Board members did not have to call each other the night before the meeting to know that a majority of the members would be there. Because of the regularity of attendance, Village Board members had every reason to anticipate that at least a quorum of the Board would be present.

When one-half or more members of a governmental body attend a meeting of another governmental body in order to gather information about a subject over which they have decisionmaking responsibility, the open meeting law applies unless the gathering is social or chance. The gatherings in this case were not social or chance gatherings. There was an understanding among the members that one-half or more of them would be in attendance. Such an understanding, whether oral or tacit, is nevertheless an agreement among the members to engage in their powers, duties, or responsibilities, which in this case was to gather information about the Sileno project for which they could ultimately cast the deciding votes. The public has a right to know what information the Village Board members have before them when making their decisions. Unless the public

576

knew that the Village Board members would be attending the Plan Commission meetings at which information regarding the Sileno project was discussed, the interested members of the public might well have foregone attendance at the Plan Commission meeting, unaware that Village Board members were being given information that would form the basis for their decision.

Based on the above, we hold that when, as here, one-half or more of the members of a governmental body attend a meeting of another governmental body in order to gather information about a subject over which they have decisionmaking responsibility, such a gathering is a "meeting" within the meaning of the open meeting law, unless the gathering is social or chance. We also conclude that the meetings at issue in this case were clearly not social or chance gatherings. The Village Board's members' attendance as a group at the Sileno project meetings was a regular occurrence, with expectations among the members that at least one-half or more of their membership would be in attendance. These factors remove their attendance from the "social or chance" gathering exception of the open meeting law. These were not social or chance gatherings. Their attendance as a group did not occur on a sporadic basis, was not haphazard, irregular, nor spontaneous. Notice of these meetings was required.

Questions were raised at oral argument which suggested that even if the attendance of the Village Board at Plan Commission meetings constituted meetings of the Village Board, separate notification should not be required because notice was properly given of the Plan Commission meeting. Thus, they argue, the public was aware of the meeting and its subject matter. However,

notice of only the Plan Commission meeting contravenes the policies behind the open meeting law because it does not give citizens the fullest public knowledge. The notice of the Plan Commission meeting alone does not alert the public of the importance of the meeting because it does not notify the public that a quorum of the Village Board will also be present to gather information upon which they will base their final vote. If the public knows that the Village Board's trustees are going to the Plan Commission meeting they will likely realize that the meeting is important and that the proposal discussed is probably something over which the Village Board will ultimately exercise final decisionmaking authority. Notice of a Village Board meeting alerts the public that what might otherwise be a relatively innocuous meeting of the Plan Commission might be more than that. Notice that a quorum of the Village Board will attend informs the public that it can go to the meeting and obtain the same information upon which the Village Board may be basing its decision. Accordingly, notice of the Plan Commission meeting alone is not enough to satisfy the requirements of the open meeting law.

The Village Board raises the concern of the effect of our holding on situations where a quorum or a negative quorum is present at a meeting of a second governmental body merely because all of the individual members of the quorum make up the membership of the second governmental body. That presents a different situation than in this case. In this case, had the quorum of the Village Board attended the Plan Commission meetings regularly because all of the individuals who made up the quorum of the Village Board also constituted the membership of the Plan Commission, separate notice would not have been required. In such a situation, notice of a Plan Com-

578

mission meeting alone gives the public the fullest knowledge possible because it gives it notice of the individuals from the Village Board who will be present, as they make up the membership of the Plan Commission. However, anytime a regular attendance of a quorum is present such that the gatherings are not social or chance and one or more of the members of the quorum is not also a member of the second governmental body, separate notice must be given.

The Village Board also contends that if this court does not require interaction and discussion as prerequisites to a finding that a gathering of members is a "meeting," our holding will be contrary to the court of appeals' decision in *Paulton v. Volkmann,* 141 Wis. 2d 370, 415 N.W.2d 528 (Ct. App. 1987). We disagree.

In *Paulton,* a quorum of the Town of Phelp's school board attended a meeting of the Town of Alvin's school board. The court of appeals held that the gathering of the quorum was not for the purpose of exercising the responsibilities, authority, power or duties of the body because "[u]nlike *Swanson* and *Showers* . . . [t]he board members did not engage in a discussion concerning the merits of merging the Phelps and Alvin school districts or gather information on this issue." *Paulton,* 141 Wis. 2d at 377–378 (emphasis added). Thus, consistent with our holding in this case, the court of appeals concluded in *Paulton* that there was not a violation of the open meeting law because the quorum did not engage in information gathering which had the possibility of influencing a decision concerning a proposal over which the group had the potential to determine the outcome.

## III.

We next address the issue of whether the April 17 meeting violated sec. 19.81(2), Stats., which provides: "all meetings . . . shall be publicly held in places reasonably accessible to members of the public and shall be open to all citizens at all times unless otherwise expressly provided by law." We find no merit to this claim whatsoever.

Badke focuses exclusively on the language "open to all citizens at all times" and contends that the language must be read literally to mean that governmental bodies are required to meet in facilities adequate to accommodate all members of the public interested in the meeting or provide an audio system. Thus, Badke contends that the Village Board violated the open meeting law by failing to move its April 17, 1990 meeting to a larger facility or provide amplification so that everyone present could clearly hear the proceedings. We disagree.

To literally interpret the words "open to all citizens at all times" would lead to unreasonable and absurd results. Badke's assertions overlook the language preceding "open to all citizens at all times." That language provides that governmental bodies must meet in places "reasonably accessible" to the public. The language "reasonably accessible" suggests that the absolute accessibility suggested by Badke is not necessary under the statute. The word "reasonably" suggests a balancing by the court on a case by case basis to review whether a meeting was reasonably accessible to the public. Read together, we conclude that the two phrases mean that a governmental body must meet in a facility which gives reasonable public access, not total access, and that it may not systematically exclude or arbitrarily refuse admittance to any individual. See *Gutierrez v. City of Albuquerque,* 96

N.M. 398, 631 P.2d 304, 306 (1981) (interpreting statute which required that individuals be allowed to "attend and listen" as mandating a reasonable public access and that no one be systematically excluded).

Applying the requirements of the open meeting law as we have construed it, we hold that the Village Board did not violate the open meeting law with respect to public access at its April 17 meeting. The meeting was held at the village hall which holds 55 people. The village hall also has a foyer that can accommodate approximately 20 people. Although Badke points to a petition signed by 1,600 village residents, there is no evidence in the record to indicate that even a small fraction of that number (perhaps 5 percent) attempted to attend the meeting. At best, we determine that no more than 3 people were ultimately denied admission. The press attended the meeting. Badke claims that many in attendance could not hear the proceedings, but the record indicates that to the extent hearing was difficult, it was intermittent and due to some disruptive attendees.

To require that a Village Board meeting be held in a place that allows attendance by everyone who wishes to attend would unduly burden local government. The question is one of reasonableness. The circuit court found, and we agree, that the village hall provided reasonable access to those members of the public wishing to attend.

*By the Court.*—The decision of the court of appeals is reversed. Rights Declared.

Justices DONALD W. STEINMETZ and JON P. WILCOX, took no part.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I agree with much of the majority's opinion.[1] I disagree, however, with the majority's conclusion that the Board conducted a reasonably accessible meeting, thereby complying with the open meeting law, secs. 19.81–19.98, Stats. 1989–90. I conclude that the Board violated the open meeting law.

The statutory requirement that meetings shall be held "in places reasonably accessible to members of the public" and "shall be open to all citizens at all times,"[2] adopts, as the majority concludes, a "reasonableness" standard.[3] Upon review of the record, I find myself in

---

[1] I agree with the majority that the court should decide the issues raised in this case. While the controversy about the validity of the Board's approval of the development project may have been eliminated by the Board's holding a second meeting in compliance with the open meeting law, the legality of the initial meeting remains in controversy. Furthermore, the plaintiffs' claim for attorney fees depends on the court's deciding whether the open meeting law was violated in this case. Section 19.97(4), Stats. 1991–92. Finally, questions about open meetings recur and might evade review if this court were to accept the Board's mootness argument in this case. The open meeting issues are of sufficient public interest to justify the court's addressing them even if we were to determine that the case was moot. *State ex rel. LaCrosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1987).

I also agree with the majority's conclusion that the open meetings law required that notice be given when a majority of the Board members attended a meeting of the Plan Commission.

[2] Sections 19.81(2), 19.82(3), 19.83, Stats. 1989–90.

[3] See 67 OAG 125 (1978). I agree with the attorney general that there is no requirement that the place which has the greatest accessibility be used. The test is whether the meeting place is reasonably accessible; that is a factual question to be determined in each case.

disagreement with the majority's application of the reasonableness standard to the facts of this case.

Reading together the words "in places reasonably accessible to members of the public" and "shall be open to all citizens at all times," sec. 19.81(2), I conclude that the open meeting law requires governmental units to hold their meetings in open, not secret, sessions and that a meeting is not in open session unless it is reasonably accessible to members of the public. When the meeting place may not be large enough to accommodate all the people who may wish to attend, the governmental unit must balance the public's right of access against the burdens that providing additional public access would impose on the governmental unit. The stated policy of the open meeting law is that "the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." Section 19.81(1), Stats. 1989–90.

Thus the governmental unit must strive for reasonable accessibility. Its selection of a meeting place must be reasonable under the circumstances. It must be flexible in setting the meeting place to accommodate unusually large crowds. 67 Op. Atty Gen. 126 (1978).

When, as happened in this case, a meeting place is challenged under the open meeting law as being too small to be reasonably accessible to members of the public, the court's role is to review the decision of the governmental unit to determine whether its selection of the meeting place was reasonable. In doing so, the court need not look for optimal outcomes, but must seek to determine whether the local governmental unit achieved a reasonable balance under the circumstances presented at the time its decision was made.

583

In the present case, I believe that the Board's decision to hold its meeting at its usual site was not reasonable under the open meeting law. The usual meeting room can accommodate 69 members of the public through a combination of seating capacity for non-Board-affiliated persons and standing room in the foyer. However, from the facts available to the Board prior to the April 17 meeting it was only reasonable to conclude that more than 69 members of the public could be expected to attend.[4] First, development projects are often controversial. A previous development project had aroused controversy in the village and a large number had attended the Board meeting at which that project was considered. Second, the public interest in this particular meeting was evident. Between 1,600 and 1,700 people had signed a petition opposing the development project to be discussed at the meeting. The petition did not lead the Board to anticipate that 1,600 people would appear at the meeting, but it should have alerted the Board that interest in the meeting was high. Third, a Planning Commission meeting on April 11, 1990, involving the same development project, had drawn a crowd of

---

[4] The majority opinion assumes that admission to the foyer (standing room for 25 people) constituted adequate access to the meeting. I would not so conclude. As the majority concedes, there is evidence in the record that some citizens couldn't hear the proceedings from the foyer. (Majority op. at 563.) Jeanne Sullivan testified about her experience in the foyer, ". . . there was enough room so that as long as we couldn't see or hear mostly anything, we sat on the floor with our legs out, and we thought we might as well wait until the meeting was over to find out really had happened from other people." (R:26-23) There is no evidence that any provision was made to enable the people in the foyer to participate in the public question and comment segment of the meeting.

584

between 75 and 150 people. The large turnout should have signaled the Board that the public was willing to attend meetings on this issue. Finally, the Board had received two communications from a concerned citizen in advance of the meeting date, asking that the meeting place be changed to accommodate a large turnout. I thus conclude that the Board, acting reasonably, should have expected an attendance far in excess of the public attendance capacity of its regular meeting room and its foyer.

Since the only reasonable conclusion the Board could have reached from the available information was that more than 69 people would probably attend, it should have considered its options for making the meeting "reasonably accessible" to the number of people expected. In considering its options, the Board was required to attempt to make the meeting "open" for two purposes—for citizens to hear the proceedings and for citizens to participate in the proceedings during the time allotted for public comments.

Several alternatives were available. In one possible scenario, the Board could have kept its regular meeting site and provided a sound system in the foyer or elsewhere. While standing for long periods is not conducive to citizen participation (and seeing as well as hearing is important), a sound system could have made the proceedings at least partially accessible to more people. As another alternative the Board could have made closed circuit television available outside the meeting room. Although the record shows that the Board did not have a sound system, the record does not demonstrate that the cost or commercial unavailability of a sound or TV system precluded either of these options.

Still another alternative would have been to schedule the meeting at a larger facility, if one was available in

a reasonable location and at a reasonable cost. The community's schools apparently had suitable rooms, since a school had been used for a prior Board meeting. The Board, however, did not explore any alternatives to its regular meeting site.

Under the circumstances presented, I would conclude that the Board violated the open meeting law when it failed, in advance of the meeting, to explore the use of a sound system, closed circuit TV, or an alternative site to provide additional access to what could reasonably have been expected to be an overflow crowd.[5]

The majority concludes that "at most three persons were ultimately denied entrance because of the crowd" and that the Board's holding the meeting at the usual meeting place "was reasonable." Majority op. at 561. To borrow a phrase from other areas of the law, this reasoning by hindsight employs a "harmless error" test, not a reasonableness test. In this case reasonableness must be judged from the perspective of the Board prior to the meeting: What should the Board have done to assure that the meeting would be reasonably accessible to the public, considering the information the Board had or

---

[5] Since the Board was alerted in advance of the meeting to the probability that a larger facility would be needed and should have made the necessary arrangements before the date of the meeting, I do not have to discuss the question of whether the Board should have rescheduled the meeting when an overflow crowd appeared at the meeting. It is not clear whether, on the evening of the meeting, the Board could have changed its location. Greendale Village Manager Donald Fieldstad, Jr. stated in an affidavit that arrangements to move the meeting to alternative rooms at Village schools "must be made when representatives of the School District are working and could not have been made just prior to the Village Board meeting on April, 17, 1990."

should have had before the meeting about the anticipated size of the crowd and the available alternatives.

Even if I were to use a harmless error test to determine whether the Board had violated the open meeting statute, I would conclude that the error was not harmless in this case. The circuit court decided the case on summary judgment and made no findings of fact. The record contains conflicting statements about how many people tried to attend and how many people were turned away. As I read the record, it is likely that more than three people were denied admission.[6] We also cannot know how many citizens were deterred from attempting to enter or to attend the meeting because they did not want to stand or to be in a large crowd confined to a small area. On this record, the error was not harmless.

I would conclude that under the circumstances presented in this case the Board's failure to have the meeting at a place that would accommodate more people was a violation of the open meeting law. For the reasons set forth, I dissent.

---

[6] Bernice Badke testified that she and her husband sat in their car and watched other *people* being turned away. Police officer David Sjoberg estimated that he held six people outside and kept them from entering the building, although three of them were apparently able to enter later.