DECISION
This matter is before the Court on plaintiff's and defendants' motions for summary judgment.
Gregory Solas (hereinafter "plaintiff") brought this action in order to prevent the Emergency Hiring Council (the "EHC") from holding meetings in violation of R.I.G.L. § 42-46-1, the Rhode Island Open Meetings Law.
The EHC was established by Executive Orders 95-2 and 95-23 to assist the Governor in controlling state personnel and fiscal resources. It was created to review vacancies, new positions, promotions, and contracts for outside services in state employment, as well as authorize the filling of such vacancies in state employment. The makeup of the EHC consists of the Director of Administration as Chair, a rotating Cabinet Director, Executive Counsel or designee, the Governor's Cabinet Secretary, and the Special Assistant to the Chief of Staff for Boards and Commissions. The individuals currently holding these positions are the named defendants.
The plaintiff's interest in the EHC stemmed from the review of a hearing officer's position under consideration for the Building Commissioner's office. The plaintiff has a history with the Building Commissioner's office, having filed numerous complaints in an effort to bring attention to laws which he felt were not being properly enforced. The plaintiff had petitioned state officials to fill hearing officers' positions, like the one under consideration by the EHC, at it's June 17, 1997 meeting. The role of the hearing officer would be to hear and respond to such complaints as those filed by the plaintiff towards the Building Commissioner's office. State Law provides for such hearing officers.
Mr. Solas learned that the EHC would be considering, at it's June 17th meeting, the filling of such a position. Prior to June 17th, the plaintiff contacted the EHC administrator in an attempt to learn when and where the meeting was to be held. The plaintiff was informed that he could not attend the meeting, in that it was closed to the public because it dealt with personnel matters. Plaintiff then informed the administrator that it was his understanding that a notice, public meeting, and vote was nonetheless required before such meeting could be closed to the public. The administrator responded that the meeting did not have to provide notice or vote to go into closed session. The plaintiff did not attend the meeting.
At the June 17, 1997 meeting, the EHC did consider whether to fill the hearing officer's position, and approved the hiring of one such officer pursuant to the terms and conditions of a vacancy notice. One such term and condition was the requirement that applicants must have a valid driver's license. No individual applicants could have been discussed since none existed at the time; the EHC was simply meeting to review whether such a position should be established.
Prior to a hearing conducted on September 22, 1997, before the Providence County Superior Court on the plaintiff's motion for a temporary restraining order, the Governor's office agreed to open the EHC meetings and follow the procedures of R.I.G.L. § 42-46-1, et. seq. to rescind the hearing officer's job posting, and to reconsider the hearing officer's position at its next meeting, though still contesting the fact that the EHC is within the scope of the Open Meetings Act. At the hearing the plaintiff's motion for injunctive relief was denied and the defendants were ordered to give 48 hours notice to the plaintiff in the event of a change.
Approximately one month later defendants gave the plaintiff one week's notice of the next EHC meeting at which the hearing officer's position would be discussed. The plaintiff did not attend the meeting.
Thereafter, the defendants answered the amended complaint, and this matter was assigned to the Presiding Justice of the Superior Court. At a conference held on April 17, 1998, a discovery and motions schedule was established.
 Standard for Summary Judgment
Summary judgment is a drastic remedy that should be cautiously applied. Summary judgment is granted when, after reviewing the admissible evidence in the light most favorable to the non moving party, there exists no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rotelli v. Catanzero, 686 A.2d 91, 93 (R.I. 1996).
Nevertheless, a litigant opposing a motion for summary judgment has the burden of proving the existence of a disputed issue of material fact. . . . The litigant cannot rest upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions. Senn v. MacDougall, 639 A.2d 294, 295 (R.I. 1994). Failure to set forth such facts will result in summary judgment entered against the party opposing the motion. Ardentev. Horan, 117 R.I. 254, 257-58, 366 A.2d 162, 164 (1976).
Defendant's request that summary judgment be granted pursuant to Rule 56 of the Superior Court Rules of Civil Procedure on the grounds that the plaintiff lacks standing and suffered no damages. Defendants also argue that plaintiff's claim is moot, lacks ripeness, and is non-justiciable.
Defendants argue that the plaintiff fails to meet the standing requirement under Rhode Island Law. The standing requirement enunciated in Burns v. Sundlun stated that a plaintiff has sufficient standing to sue if he or she alleges "an injury in fact resulting from the challenged statute." The court in Burns described the test for standing by stating that "the petitioner must still allege a personal stake in the controversy — his own injury in fact — before he will have standing to assert the broader claims of the public at large." Burns v. Sundlun,617 A.2d 114, 116 (R.I. 1992) citing, Blackstone Valley Chamber ofCommerce v. Public Utilities Commission, 452 A.2d 931, 933 (R.I. 1982). Defendants argue that the plaintiff has never made the requisite showing of an actual stake in a case or controversy to establish standing. Defendants' argue, and do so correctly, that being a public advocate is not enough to establish standing. They also argue that plaintiff had no entitlement to an interest in whether the hearing officer's position was authorized to be filled.
Defendants' argument is plagued by one fatal flaw. They fail to recognize the actual issue in this case. The issue is not whether the plaintiff has an interest in the filling of the hearing officer's position, or a personal stake in the outcome of the hearing, but rather, it is that the plaintiff has the right to attend a public meeting and enforce the requirement that meetings be held in public. Plaintiff brought suit not because a hearing officer's position was created which included certain requirements that he could not meet, but he is suing to preserve and enforce the requirement that public meetings be held in public. That right is established in R.I.G.L. § 42-46-1, etseq. of the Rhode Island Open Meetings Act. Section One sets out the public policy of the state:
 "It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and be aware of the performance of public officials and the deliberations and decisions that go into making of public policy."
Section Three states:
 "Every meeting of all public bodies shall be open to the public unless closed pursuant to §§ 42-46-4
and 42-46-5."
Plaintiff's right to attend a public meeting does not depend on his having a stake in the substance of the meeting. Rhode Island's Open Meetings Act ensures that members of the public have the right to attend public meetings. It does not state that in order to enforce that right, one must have a stake in the matter being discussed.
The tendency of this Court is to confer standing liberally in matters involving substantial public interest. Burns v. Sundlun,617 A.2d 114, 116 (R.I. 1992) citing, Gelch v. State Board ofElections, 482 A.2d 1204, 1202 (R.I. 1984).
In Burns, the Supreme Court found that the plaintiff did not have standing because he failed to allege his personal stake in the establishment of off track betting and the extension of an existing gambling activity. It was concluded that the injury he shared was shared by every other registered voter in Rhode Island. The plaintiff was unable to distinguish his claim from the claims of the public-at-large.
The Court went on to note, however, that the plaintiff raised a question of statutory interpretation of great importance to citizens in localities that could become home to gambling facilities seeking to simulate and invite wagering on out-of-state events. The Court found that the question of whether the public had a right to vote at a public referendum on this issue was a matter of substantial public interest, and thus, the Court conferred standing liberally.
The issue in this case revolves around the scope of Rhode Island's Open Meeting Law and whether certain governmental entities are subject to it. The Open Meetings Law was enacted to protect the public from "closed door" politics and get the workings of government out into the "sunshine." The interpretation of this law, therefore, is certainly an issue of substantial public interest and, like Burns, a liberal interpretation of the standing requirement is appropriate here.
Defendants argue that plaintiff lacks damages in that he has suffered no harm of any nature in this dispute. Defendants point to the fact that they voluntarily rescinded the job posting, agreed to reconsider the position, open future EHC meetings to the public, and agreed to follow the procedures of the Open Meeting Law. Defendants also point to the fact that by declining to attend the open EHC meeting on October, plaintiff tacitly acknowledged that he achieved the changes that he desired, had no injury, and no further claim.
If the meeting held by the EHC is deemed to be open to the public, thus governed by the Open Meetings Law, then plaintiff had a right to attend that meeting and be heard. Since plaintiff was not allowed to attend this meeting, his rights may have been violated pursuant to Section 42-46-8 (c) which also works to negate defendants' standing arguments. The statute protects and sets forth the rights of an individual to sue for violations of the Open Meetings Act.
It provides:
 "(c) Nothing within this section shall prohibit any individual from retaining private counsel for the purpose of filing a complaint in the Superior Court . . . against the public body which has allegedly violated the provisions of this chapter. . . ." (Emphasis added).
Section (c) provides for the terms of which one may sue a public body which has violated the Act. It does not make injury a requisite in suing the public body.
Defendants go on to argue that this matter is moot because plaintiff's claims currently are "too far beyond a useful remedy." 13A Wright Miller Cooper, Federal Practices and Procedures Sections 3531.12 at 50 (1984). Defendants claim that their voluntary actions to rescind the posting of the hearing officer's position, as well as opening their meeting to the public, have provided the plaintiff with the relief he sought. Furthermore, defendants argue that plaintiff is bound by the doctrine of ripeness if plaintiff seeks a useful remedy in order to deter future harm, as well as the fact that such actions would be misguided in light of the defendants' voluntary policy to open their meetings.
This case is analogous to State of Wisconsin ex rel. Badke,173 Wis.2d 553, 494 N.W.2d 408 (1993) which addressed this argument. In Badke, where a meeting of the Village Board resulted in the approval of a proposal. Residents filed an action in the circuit court alleging that the Village Board violated the Open Meetings Law requirements. The court instituted an injunction. The Village Board then reconvened and revoted on the proposal in a proceeding that complied with the Open Meetings Law. Plaintiffs amended their complaint to seek declaratory relief regarding the violation and added a second claim that the Open Meetings Law was violated by not giving public notice of the meeting. The Village Board moved for summary judgment claiming the case as moot. The Supreme Court of Wisconsin found that the case was not moot. As is the case here, the Court found that the controversy in the case is the legal status of the acts that preceded the vote, not the actual effect or substance of the vote. The same is true here, the controversy continues despite the second valid meeting. There is still a dispute as to whether the Open Meetings Act applies to the EHC.
This Court is hesitant to dismiss this complaint on the grounds that a rescinding of the position and the voluntary opening of the meetings to the public makes this case moot. Such a decision would circumvent the policy of the Open Meetings Law. Rather than hold open meetings, a government entity could hold meetings behind closed doors, and upon the filing of a complaint, open the meeting to the public. The complaint would then be dismissed as moot. This is the type of conduct that the Open Meetings Law is designed to prohibit.
Finally, defendants move for summary judgment also on the grounds of non-justiciability. The defendants argue that the case or controversy was extinguished by the voluntary measures taken by the defendants. As has already been stated, this argument has a fundamental flaw, the controversy is not extinguished. There is still a dispute as to the actions the EHC took prior to establishing the hearing officer position.
Accordingly, defendants' motion for summary judgment on the basis that the plaintiff lacks standing, damages, as well as the fact that the claim is moot, lacks ripeness and is nonjusticiable, is denied.
R.I.G.L. § 42-46-1 of the Rhode Island Open Meetings Law or the "Sunshine Law" provides that public business be performed in an open and public manner, and that citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy.
 Section 42-46-2 defines "public body" as:
 ". . . any department, agency, commission, committee, board, council, bureau, or authority or any subdivision thereof of state or municipal government. For purposes of this section any political party, organization, or unit thereof meeting or convening for any purpose is not and should not be considered to be a public body.
 R.I.G.L. § 42-46-2 (a) defines "meeting" as:
 ". . . the convening of a public body to discuss and/or act upon a matter over which the public body has supervision, control or jurisdiction, or advisory power. As used herein, the term `meeting' shall expressly include, without limiting the generality of the foregoing, so-called "workshop," "working," or "work sessions."
The Sunshine Law was enacted for the public interest to protect the public from "closed door" politics and, as such, the law must be broadly construed to affect its remedial and protective purpose. Wood vs. Marston, 442 So.2d 938. The law, having been enacted for the publics benefit, should be interpreted in the light most favorable to the public. Canney v.Board of Public Instruction of Alachua County, 278 So.2d 260, 263 (1973).
Plaintiff contends that the EHC is subject to the Rhode Island Open Meetings Law because it is a public body conducting public business.
Defendant, EHC, contends that it is not a public body under R.I.G.L. § 42-46-2 (c), but rather, executive staffers who recommend policies and general personnel actions. Defendants argue that since this council consists of the Governor's senior staff members, comparable to the cabinet or other internal organ of the Executive Branch, it should be excluded from the Sunshine Law. This Court disagrees and adheres to the rule set forth in the case of News-Press Publishing Co., Inc. v. Carlson, we must look to the substance of the council rather than the form of the council. News Press Publishing Co., Inc. v. Carlson,410 So.2d 546, 548 (Fla. 1982). The question to be determined is whether the EHC is subject to the Open Meetings Law. In analyzing whether the EHC is subject to the requirements of the Open Meetings Law, it is necessary to first determine the function and role of the EHC.
The expressed purpose of the EHC is ". . . to assist in controlling the state personnel and fiscal resources during difficult budgetary times" and further "to suggest reforms to the state personnel system."
Powers granted to the council in pertinent part include:
1. All vacant positions shall remain vacant and shall not be filled unless authorization is given by the EHC;
2. No new positions may be created and filled without the authorization of the EHC; and,
3. Promotions, whether from the filling of vacant positions, creation of new positions, or by other means, require the authorization of the EHC.
There is no Rhode Island case on point, but there is ample case law from other jurisdictions which make clear that the EHC is subject to the Open Meetings Act.
The EHC assists in the management of states personnel and fiscal resources; it authorizes the creation and filling of state positions. The EHC resolves personnel issues, it puts forth suggestions for reforming the system and improves the quality and delivery of the system.
The EHC are not fact-finders, rather, they are vested withdecision-making authority. The present case has its origins in the council's decision to create and fill a position to hear and respond to complaints filed with the State Building Commissioner. There is a preponderant interest in allowing the public to participate in the creation and filling of such government positions: to learn of the conditions and certain requirements established, as well as the amount of positions to be filled, and to voice their opinions and concerns.
The facts of this case are clearly analogous to the facts of numerous other cases on this issue, most notably, Wood v.Marston, town of Palm Beach v. Gradison and News-Press Publishingv. Carlson. Each of these cases involved a delegation of a portion of the decision-making authority to an advisory group.
In Town of Palm Beach. an advisory committee to the zoning commission made tentative decisions guiding the zoning planners as well as advising the town council. The court in Palm Beach
found that the preponderant interest of allowing the public to participate in the conception of a proposed zoning ordinance was sufficient to justify the inclusion of this selected subordinate group within the provisions of the Sunshine Law. Town of PalmBeach v. Gradison, 296 So. 20 475. The nature of the committee and its function reached the status of a board or commission that to act legally must comply with the Sunshine Law.
In News-Publishing Co., v. Carlson, the governing authority of a hospital delegated the responsibility of the preparation of the proposed budget to a committee and upon doing so, the court found that the nature and function of that committee reached the status of a committee that must comply with the Sunshine Law. The court found the committee's acts to be decision making even though there were review procedures which took place prior to the ratification of the decision made.
The facts before us illustrate a decision-making process by a committee upon which there are no review procedures prior to the ratification of the decision made. The EHC decision is the final decision, and even if that decision was subject to a review procedure, it would still clearly fall within the scope of the Open Meetings Act.
In Wood v. Martson, Martson delegated official acts to a board and even though the faculty had the power to review and reject the decisions, the court found that decisions were being made and, therefore, the board was subject to the Open Meetings Law. The court found that the review of the decision-making process could not serve to replace the public right to firsthand access to that process. The public is entitled to firsthand observation with respect to the decision-making process. Wood v.Martson, 442 So.2d 939.
The present case before this Court is analogous to these cases in that the EHC was a council conceived by the Governor to manage and control the state's personnel and fiscal resources. The Governor vested the EHC with decision-making powers, such as the power to decide to create and fill a hearing officer's position in the Building Commissioner's office. Therefore, as inWood, the public is entitled to firsthand observation with respect to the decision-making process. It is the finding of this Court that since the defendants' meeting entailed a decision-making process, they were and are required to conduct their meetings within the provisions of the Open Meetings Law.
Defendants raise the argument that the extension of the act beyond the voluntary measures assumed by the EHC would be unworkable and impossibly burdensome on the operations of the executive, as well as contrary to the public's interest in efficient, effective and responsive government. This Court disagrees. In Bennett v. Warden, the court drew a distinction between councils who were created for the purpose of "fact-finding" to assist in the execution of the governing bodies duties and those who exercise decision-making functions. The court found that "frequent and unpublicized meetings between an executive officer and advisors, consultants, staff or personnel under his direction, for the purpose of fact finding to assist him in the execution of those duties, are not meetings within the contemplation of the Sunshine Law . . . any other conclusion, would in our view unduly hamper the efficient operation of modern government the administration of which is more and more being placed in the hands of professional administrators. It would be unrealistic, indeed intolerable, to require such professionals, that every meeting, every contact, and every discussion with anyone from whom they would seek council or consultation to assist in acquiring the necessary information, data or intelligence needed to advise or guide the authority by whom they are employed, be a public meeting within the disciplines of the Sunshine Law. Neither the letter nor the spirit of the law require it." Bennett v. Warden,333 So.2d 97, 98-99 (Fla 1994).
This Court adheres to this standard and recognizes those circumstances which allow the meetings to fall outside the scope of the Sunshine Laws so as to not unduly hamper the efficient operation of modern government, such as when a committee functions merely as "fact-finders" or when the committee is too far remote from the decision-making process to be capable of making or formulating policy.
That is not the present case. The EHC was a decision-making entity, they were not merely "fact-finders," and their decision had a direct effect on public policy.
Plaintiff's motion for summary judgment is hereby granted.
Counsel for plaintiff shall prepare and submit a judgment consistent with this decision.