631 P.2d 304

Mary Ann GUTIERREZ, et al.,
Plaintiffs-Appellees,

v.

CITY OF ALBUQUERQUE, David Rusk,
Mayor of the City of Albuquerque, City
Council, Marion Cottrell, President of
the City Council, Defendants-Appellants,

v.

ELLIOTT ENTERPRISES, INC., a New
Mexico corporation,
Intervenor-Appellant.

STATE of New Mexico, ex rel. Rosie DE
LA FUENTE, Petitioner,

v.

Hon. W. John BRENNAN, District
Judge, Respondent.

Nos. 13419, 13264.

Supreme Court of New Mexico.

June 25, 1981.

Rehearing Denied July 22, 1981.

George R. "Pat" Bryan, City Atty., Barbara G. Stephenson, Beth McLellan, Asst. City Attys., Albuquerque, for defendants-appellants and respondent.

Robert H. Scott, Albuquerque, for intervenor-appellant.

Larry L. Lamb, Ray M. Vargas, Tito Chavez, Albuquerque, for plaintiffs-appellees and petitioner.

Sutin, Thayer & Browne, LaFel E. Oman, Kevin V. Reilly, Santa Fe, amicus curiae.

## OPINION

EASLEY, Chief Justice.

Two cases are consolidated in this appeal. It is unnecessary to sort out the procedural morass by which these cases have come before us. Suffice it to say that in one case, brought by various citizens of Albuquerque (Petitioners), the district judge ruled that a meeting of the City Council of Albuquerque, at which the application of Elliott Enterprises, Inc. (Elliott), for permission to sell alcoholic beverages within 300 feet of a school was granted, did not comply with Section 10–15–1, N.M.S.A.1978 (Repl.Pamp.1980), of the Open Meetings Act. We reverse this decision. In the other case, brought by Elliott, another district judge ruled that the meeting complied with the requirements of the Open Meetings Act. We affirm this decision.

The sole issue presented by these cases is whether the fact that the Council Chambers were not large enough to accommodate all of the large crowd that appeared to attend the meeting, rendered invalid the approval of Elliott's application on the ground that it was not a public meeting.

Elliott's application for permission to sell alcoholic beverages within 300 feet of a school generated a great deal of public interest and controversy. An overflow crowd arrived to attend the City Council meeting of July 28, 1980, at which Elliott's application was considered. The Council Chambers were filled in excess of the maximum occupant load of 156 persons. The rest of the crowd (including Petitioners) had to remain outside the Chambers. As persons left the Chambers, others were allowed to enter. Loudspeakers were set up outside the Chambers and were operative during at least a portion of the meeting so that those outside the Chambers could listen to the proceedings. The meeting was broadcast on an Albuquerque radio station and received extensive media coverage. A motion was made to move the meeting to a larger room at the beginning of the meeting, but was denied for a variety of reasons, including inadequate sound systems at alternative locations. Members of the public who registered were allowed to present their views to the Council. Proponents of the agenda items were allowed one hour to present their views; opponents of the items were ultimately allowed one hour and fifteen minutes to present their views.

Petitioners contend that the meeting was not a public meeting as required by Section 10–15–1 of the Open Meetings Act on the ground that they were not allowed to attend and listen to the proceedings. Pertinent portions of Section 10–15–1 provide:

A. The formation of public policy . . . shall not be conducted in closed meeting. All meetings of any public body, except the legislature, shall be public meetings and *all persons so desiring shall be permitted to attend and listen* to the deliberations and proceedings.

B. All meetings of a quorum of members of any ... policy-making body of any ... municipality ... held for the purpose of formulating public policy, discussing public business or for the purpose of taking any action ... are declared to be public meetings open to the public at all times, except as otherwise provided .... (Emphasis added.)

Petitioners focus upon the language "attend and listen" and contend that all must be in the room or in the presence of the Council members, regardless of the size of the crowd and the limitations of the meeting hall. This narrow view would permit invalidation of any action by a public body by the simple method of overflowing the Chambers. Thus, the Council, to be safe, would have to hire the football stadium or hold its meetings in a wide open space. Even then, *reductio ad absurdum*, if a tree or other obstruction stood between an individual and the Council, he could claim that he was not permitted to "attend".

To "attend and listen" is equally susceptible of an interpretation that persons desiring to attend shall have the opportunity to do so, that no one will be systematically excluded or arbitrarily refused admittance, and that the meeting will not be "closed" to the public. The circumstances of this case make manifest the reasonableness of such an interpretation. Everyone desiring to attend the City Council meeting was afforded an opportunity to do so, but once the hall was filled, no others could be admitted.

Since the phrase is susceptible of different interpretations by reasonable men, we turn to the rules of statutory construction in an effort to discern the intent of the Legislature. *N. M. State Bd. of Ed. v. Bd. of Ed., Etc.,* 95 N.M. 588, 624 P.2d 530 (1981). In ascertaining legislative intent, we will look not only to the language used in the statute, but also to the object sought to be accomplished and the wrong to be remedied. We will give effect to legislative intent by adopting a construction which will not render the statute's application absurd or unreasonable and will not

lead to injustice or contradiction. *N. M. State Bd. of Ed. v. Bd. of Ed., Etc., supra; State ex rel. Newsome v. Alarid,* 90 N.M. 790, 568 P.2d 1236 (1977).

In *Raton Public Service Company v. Hobbes,* 76 N.M. 535, 417 P.2d 32 (1966), this Court examined a predecessor to the current Open Meetings Act which provided that "governing bodies of all municipalities ... shall make all final decisions at meetings open to the public." § 5–6–17, N.M.S. A.1953. The Court stated that the purpose of this statute "was to provide that governing bodies dealing with public funds be required to make decisions in the open where the interested public could observe the action." *Id.* at 543, 417 P.2d at 37. Though the statute has changed in certain particulars since that case, we see nothing to indicate any fundamental change in legislative purpose.

The Arizona Supreme Court, examining a statute quite similar in language to our Section 10–15–1, stated that "[t]he intent of the legislature was to open the conduct of the business of government to the scrutiny of the public and to ban decision-making in secret. (Citations omitted.) A meeting held in the spirit of this enunciated policy is a valid meeting." *Karol v. Bd. of Ed. Trustees, Etc.,* 122 Ariz. 95, 593 P.2d 649, 651 (1979).

The Minnesota Supreme Court has stated that "[t]he purpose of [the Open Meetings] statute is to prohibit action's [sic] being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences. But while the statute orders that the public be given an opportunity to observe, it does not compel a board to conduct business in a place most advantageously suited for public viewing." *Lindahl v. Independent School District No. 306,* 270 Minn. 164, 133 N.W.2d 23, 26 (1965) (footnote omitted).

Section 10–15–1(A) prohibits "closed meeting[s]" and requires "public meetings" at which interested persons can "attend and listen to the deliberations and proceedings."

Like the Arizona and Minnesota statutes, the purpose of this statute is clearly to open the meetings of governmental bodies to public scrutiny by allowing public attendance at such meetings.

■ It can be said with equal assurance that in enacting the Open Meetings Act the Legislature did not intend to impair or impede the effective workings of the various political subdivisions of the state. Exceptions to the open meetings requirement are allowed in Section 10–15–1(E). Under Section 10–15–3, every action taken by such a governmental entity is presumed to have been taken in accordance with the requirements of the Open Meetings Act. These provisions make clear that the Legislature did not intend to unduly burden the appropriate exercise of governmental decision-making and ability to act.

This Court has stated that "[s]trict construction of a statute does not contemplate arbitrary or inequitable meaning which would give third parties an opportunity to take advantage of legal technicalities, but only such meaning as will require substantial compliance with the statute." *Rutledge v. Johnson*, 81 N.M. 217, 222, 465 P.2d 274, 279 (1970) (citation omitted).

Substantial compliance has occurred when the statute has been sufficiently followed so as to carry out the intent for which it was adopted and serve the purpose of the statute. *Smith v. State*, 364 So.2d 1 (Ala.Cr.App.1978). This doctrine has been applied to open meetings laws by the courts of several states. *See Karol v. Bd. of Ed. Trustees, Etc., supra; City of Flagstaff v. Bleeker*, 123 Ariz. 436, 600 P.2d 49 (Ct.App. 1979); *Houman v. Mayor and Council, Etc.*, 155 N.J.Super. 129, 382 A.2d 413 (1977); *McConnell v. Alamo Heights Ind. Sch. Dist.*, 576 S.W.2d 470 (Tex.Civ.App.1978); *Toyah Ind. Sch. Dist. v. Pecos-Barstow Ind. Sch. Dist.*, 466 S.W.2d 377 (Tex.Civ.App.1971); *see also Edwards v. City Council of City of Seattle*, 3 Wash.App. 665, 479 P.2d 120 (1970).

■ Construing the statute consistent with these policies, we conclude that the words used mean only that the governmental entity must allow reasonable public access for those who wish to attend and listen to the proceedings. We hold that the City Council meeting fully met the requirements of the Open Meetings Act as we have construed it. The meeting was held in a hall designed to accommodate a large number of spectators. When the size of the crowd exceeded the capacity of the hall, every effort was made to allow those who could not gain entrance to listen to the proceedings. The City Council even went beyond the requirements of the Open Meetings Act and allowed members of the public to address the Council and present their views for over two hours. A meeting could hardly be more open or more public.

The ruling in *State ex rel. Rosie de La Fuente v. Hon. W. John Brennan*, No. 13,-264 is affirmed, and the alternative writ issued by this Court in that cause is discharged. The ruling in *Gutierrez, et al. v. City of Albuquerque*, No. 13,419 is reversed.

IT IS SO ORDERED.

SOSA, Senior Justice, and FEDERICI, J., concur.