NO. 4-03-0158

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

DR. JOSEPH K. GERWIN and CAROLYN K. GERWIN,

          Plaintiffs-Appellants,

          v.

LIVINGSTON COUNTY BOARD, LIVINGSTON COUNTY, ILLINOIS; JOHN T. JACOBSON; and AMERICAN DISPOSAL SERVICES OF ILLINOIS,

          Defendants-Appellees.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Livingston County

No. 02CH47  

Honorable

Stephen R. Pacey,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiffs, Joseph K. and Carolyn K. Gerwin, sued the Livingston County board and its chairman, John T. Jacobson, for holding a public meeting in an "inconvenient" place, in violation of section 2.01 of the Open Meetings Act (Act) (5 ILCS 120/2.01 (West 2002)).  In that meeting, the board voted to amend the county solid-waste disposal plan (plan) so that American Disposal Services of Illinois (American Disposal) could expand a landfill in Pontiac.  The trial court allowed American Disposal to intervene as a defendant, and American Disposal and the other defendants moved to dismiss plaintiffs' first-amended complaint, with prejudice, pursuant to sections 2-615(e) and 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-615(e), 2-619(a)(9) (West 2002)).  The court granted the motions to dismiss, and plaintiffs appeal.  

Plaintiffs argue that because the board knew ahead of time that the meeting would attract more people than would fit into the county boardroom and because alternative venues were available, the boardroom was not "convenient *** to the public" within the meaning of section 2.01 of the Act.  We hold that the issue of public convenience was one of fact that the trial court should not have resolved on the pleadings.  Plaintiffs have stated a cause of action, and we reverse the trial court's judgment.    

           
 I. BACKGROUND

Because the trial court dismissed the first-amended complaint pursuant to sections 2-615 and 2-619, we accept all well-pleaded facts in the first-amended complaint as true and draw all reasonable inferences from those facts in plaintiff's fav­or.  See 
Storm & Associates, Ltd. v. Cuculich
, 298 Ill. App. 3d 1040, 1047, 700 N.E.2d 202, 207 (1998).  We review the dismissal 
de
 
novo
.  
Glisson v. City of Marion
, 188 Ill. 2d 211, 221, 720 N.E.2d 1034, 1039 (1999); 
Thomas v. Hilema­n
, 333 Ill. App. 3d 132, 136, 775 N.E.2d 231, 234 (2002).

Plaintiffs allege the following facts in their first-amended complaint.  Allied Waste Disposal, through its subsidiary, American Disposal (we will refer to the two collectively as Allied Waste), operates a landfill in Pontiac.  Sometime prior to May 16, 2002, Allied Waste informed the board that it wished to expand the landfill.  Such an expansion would have been impermissible under the plan in effect at the time.  Therefore, Allied Waste requested the board to amend the plan to allow the expansion.  The board published an announcement in a local newspaper that it would hold a public hearing on the proposed amendment on May 16, 2002.  

Approximately 20 members of the public, including Carolyn Gerwin, attended the May 16 meeting.  "The room was crowded ***."  Plaintiffs allege, on information and belief, that Jacobson supported the expansion of the landfill.  He announced that members of the public would be allowed only three minutes apiece to address the board on the proposed amendment of the plan.  "In contrast to the limits put on citizens' comments, representatives of Allied Waste were permitted to address the [b]oard in an interactive format for an extended period of time," and "Jacobson and the [b]oard allowed representatives of Allied Waste to have greater access to [b]oard members during the public meeting than was provided to members of the general public, including [p]laintiffs."  The board decided to delay voting on the proposed amendment of the plan until its meeting scheduled for June 13, 2002.

In the meantime, opponents of the landfill collected signatures on petitions and took out "large ads" in local and regional newspapers, urging citizens to attend a meeting of the agricultural committee scheduled for June 4, 2002, as well as a meeting of the board scheduled for June 13, 2002.  (The agricultural committee was a standing committee of the board and had jurisdiction over landfills.)  

"[A]n overflow crowd of citizens" attended the June 4 committee meeting.  "Many people," including Joseph Gerwin, "were forced to stand in the hallway."  Plaintiffs allege, on information and belief, that the room where the board met had "a maximum capacity of 49 persons under the fire code.  This number would have to include the 28 [b]oard members and their advisors."  Carolyn Gerwin managed to get into the boardroom on that occasion and gave the board a petition bearing the signatures of 500 Livingston County residents opposed to the expansion of the landfill.  

The "[a]dministrative [c]ommittee of the [b]oard" had a meeting on June 6, 2002, and according to the minutes of that meeting, Frank Livingston of the agricultural committee reported that 97 people had attended the June 4 meeting.  Another board member, Dee Woodburn, "expressed concern about the lack of space for spectators in the [b]oard room and asked if there was any possibility of changing the location for the June [b]oard meeting.  According to the minutes, 'Jacobson suggested it would be difficult to change at this point in time.'"

Plaintiffs allege, on information and belief, that Jacobson and the board knew, at least seven days in advance, that the June 13 meeting would attract large numbers of the public.  Nevertheless, the board made no effort to move the meeting to a larger room.  Plaintiffs allege:

"Despite inquiries from news organizations and members of the public regarding changing the venue of the meeting to accommodate anticipated crowds, Mr. Jacobson stated to the press and to individuals that the [b]oard would meet in its regular chambers [in the county courthouse,] despite the very limited capacity of the room."

Plaintiffs further allege, on information and belief, that Jacobson actually "attempted to discourage public participation in the June 13 board meeting by telling members of the public and the press that the June 13 meeting would not be moved to a larger room."

Plaintiffs further allege:

"In the past, when large numbers of citizens were known to be interested in matters before the [b]oard, the [b]oard arranged to hold its meeting in a larger space.  For example, a meeting concerning property tax caps was held at the Pontiac Township High School."

After voting to amend the plan, the board held hearings for an entire week on Allied Waste's application to expand the landfill, and the location of those hearings was the more expansive Pontiac city council chambers rather than the boardroom.

Plaintiffs further allege, on information and belief, that members of the public began arriving an hour ahead of time for the June 13 board meeting, lining up outside the courthouse, but Allied Waste had "encouraged its employees, union members[,] and their families to arrive at the courthouse extremely early so that they could fill the [b]oard[]room with pro-landfill employees."  When Carolyn Gerwin arrived 15 minutes before the meeting, "the crowd outside the courthouse had grown to at least 75 people.  More than 150 people attempted to attend the June 13 meeting."  Although Jacobson and the board knew that most of those people would not fit into the boardroom, they made no arrangements to accommodate them.  "Several alternatives were available *** that could have provided the public access to the meeting."

Five minutes before the meeting, the courthouse doors swung open, and the crowd entered the courthouse, but "[o]nly a few members of the public were able to enter the meeting room."  Plaintiffs allege that "[m]ost of the citizens who were permitted to enter the [b]oard[]room were in favor of the landfill.  Only a few landfill protesters gained admittance," although (plaintiffs allege on information and belief) more people in the crowd were opposed to the landfill than in favor of it.  "Agents of Allied Waste were permitted to enter the meeting room despite having arrived after citizens who were made to stand in the hall."  By "[e]xcluding members of the public from the meeting room," the board "prevented most opponents of the landfill from observing and visually confronting [b]oard members during the meeting."  Had the board admitted plaintiffs and other protesters into the room, it "may have decided to allow additional public comment from interested citizens." 

At first, Carolyn Gerwin had to stand in a stairwell between the first and second floors of the courthouse.  Later, she was able to reach the second-floor hallway and stand about 10 feet from the door of the boardroom, along with 100 other people.  Joseph Gerwin, who had arrived just before the meeting began, also was forced to stand in the second-floor hallway, about 20 feet from the door.  Neither plaintiff could hear or see any of the proceedings of the board meeting.  The air in the packed hallway was "close, hot, airless, and uncomfortable.  No seating was made available at any time."  Plaintiffs allege, on information and belief, that many members of the public left, either because they could not hear or see the meeting or because conditions in the courthouse were intolerable.

The board voted 16 to 11 in favor of amending the plan, with one member abstaining.                        

In their first-amended complaint, plaintiffs requested the trial court to (1) nullify the vote of June 13, 2002; (2) issue an injunction against future violations of the Act; (3) require that "all future meetings concerning the *** [l]andfill be held at such locations as are sufficient to accommodate all interested members of the public, such that they may see and hear all proceedings in reasonable comfort and safety"; (4) award plaintiffs reasonable attorney fees and costs; and (5) appoint a "special prosecutor" to investigate possible violations of the Act.

In granting the motions to dismiss, the trial court chiefly relied on the Second District's decision in 
People ex rel. Graf v. Village of Lake Bluff
, 321 Ill. App. 3d 897, 748 N.E.2d 801 (2001), 
rev'd
, 206 Ill. 2d 541, 795 N.E.2d 281 (2002).  Some four months after the dismissal of plaintiffs' first-amended complaint, the supreme court reversed the appellate court's judgment in 
Graf
 for reasons having nothing to do with the Act.  
People ex rel. Graf v. Village of Lake Bluff
, 206 Ill. 2d 541, 558, 795 N.E.2d 281, 290 (2002) ("
quo
 
warranto
 will not lie because the validity of the annexation process has already been given final judicial approval").  In the present case, the trial court interpreted the appellate court's decision in 
Graf
 as holding that "people do not have an absolute right to be present in the meeting room or to participate in the public meeting; and that the purpose of the Act is satisfied as long as the meeting is not conducted in secrecy."  The trial court stated:  "[T]his was a publicly noticed meeting open to the public[,] and *** members of the public were in fact there; *** that some people were not able to get into the room[ ] [was] not a violation."  

The trial court acknowledged that "some size of room"--a "broom closet," for example--could "violate[ ] the spirit of the law," but the county board room was "regularly used for open meetings," and "there were lots of people there."

This appeal followed.

II. ANALYSIS

A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2002)) challenges the legal sufficiency of the complaint, whereas a motion to dismiss under section 2-619(a) of the Code (735 ILCS 5/2-619(a) (West 2002)) admits the legal sufficiency of the complaint but asserts additional matters outside the complaint that defeat the plaintiff's claim.  
Wallace v. Smyth
, 203 Ill. 2d 441, 447, 786 N.E.2d 980, 984 (2002).

According to the board's and Jacobson's motion to dismiss, those additional matters were the minutes of the June 13, 2002, meeting, which showed that the board had deliberated and voted "in open session[] and not in closed session."  The board and Jacobson argue that those minutes defeat plaintiffs' claim for two reasons:  (1) a court may not nullify the vote of June 13, 2002, because it occurred in an open rather than a closed meeting (5 ILCS 120/3(c) (West 2002)); and (2) the Act requires only that the meeting be open or "not conducted in secrecy"  (
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811).  

If the June 13, 2002, meeting had been an open meeting, we agree that fact would partly defeat plaintiffs' claim in that it would narrow their remedies.  In their first-amended complaint, plaintiffs request a nullification of the board's vote of June 13, 2002.  A court may "declar[e] null and void any final action taken at a 
closed
 meeting in violation of this Act."  (Emphasis added.)  5 ILCS 120/3(c) (West 2002).  "The statute permitting the court to declare the action void refers by its terms only to a 'closed session.'"  
Williamson v. Doyle
, 112 Ill. App. 3d 293, 300, 445 N.E.2d 385, 390 (1983).  

Keeping in mind that dismissal is a drastic way to end a case (
Friedman, Alschuler, & Sincere v. Arlington Structural Steel Co.
, 140 Ill. App. 3d 556, 489 N.E.2d 308 (1985)) and a court should not dismiss a complaint unless it clearly appears that no set of facts could be proved under the complaint that would entitle the plaintiff to relief (
City of North Chicago v. North Chicago News, Inc
., 106 Ill. App. 3d 587, 594, 435 N.E.2d 887, 892 (1982)), we hold that plaintiffs have pleaded a meeting that was not entirely open.  According to the first-amended complaint, the board gave one segment of the public, agents of Allied Waste, preferential access to the June 13, 2002, meeting and, to that extent, excluded opponents of the landfill.  Plaintiffs allege:  "Agents of Allied Waste were permitted to enter the meeting room despite having arrived after citizens who were made to stand in the hall."  

"Open" means "not restricted to a particular group or category of participants."  Merriam-Webster's Collegiate Dictionary 811 (10th ed. 2000). 
 That the board was officially "in open session" does not refute plaintiff's allegation that the board gave preferential admission to agents of Allied Waste and, to that extent, restricted the audience to a particular group.  
Cf.
 
Gutierrez v. City of Albuquerque
, 96 N.M. 398, 400, 631 P.2d 304, 306 (1981) (statutory right to "attend and listen" means that "no one will be systematically excluded or arbitrarily refused admittance" and "[e]veryone desiring to attend" will be "afforded an opportunity to do so"); 
Wyse v. Rupp
, No. F-94-19, 1995 WL 547784, at *5 (Ohio App. September 15, 1995) (finding a meeting was open because the public agency "dealt with the large crowd in a reasonable and impartial manner," without "intentionally barr[ing] certain members of the public from having access to the meeting").  Taking the factual allegations in the first-amended complaint as true, we hold that nullification of the vote is a potential remedy, discretionary with the trial court (
Graf
, 321 Ill. App. 3d at 908, 748 N.E.2d at 811).  

We also disagree with defendants' contention that the Act requires only "open" meetings in the technical sense, 
i.e.
, meetings in open rather than closed session.  On its face, section 2.01 of the Act requires more than mere "openness."  It provides:  "All meetings required by this Act to be public shall be held at specified times and places which are 
convenient and open
 to the public."  (Emphasis added.)  5 ILCS 120/2.01 (West 2002).  We strive to interpret a statute in such a way that no word is superfluous.  
Primeco Personal Communications, L.P. v. Illinois Commerce Comm'n
, 196 Ill. 2d 70, 91, 750 N.E.2d 202, 214 (2001).  By its plain terms, section 2.01 requires a venue that is not only "open," but "convenient," to the public.  

From the legislative history of section 2.01, "open" and "convenient" are clearly not synonymous.  Section 2.01 formerly read:  "All meetings required by this Act to be public shall be held at specified times and places which are convenient to the public."  5 ILCS 120/2.01 (West 1992).  Section 5 of Public Act 88-621 added the words "and open" after "convenient."  Pub. Act 88-621, §5, eff. January 1, 1995 (1994 Ill. Laws 1416, 1422).  Because the legislature saw the need to add "open," it must follow that "convenient" and "open" have different meanings.   Like the trial court, defendants rely heavily on the Second District's decision in 
Graf
, particularly its statement that "the Act's purpose is satisfied so long as meetings are not conducted in secrecy."  
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811.  One could push that statement too far by applying it to facts that were not before the appellate court in 
Graf
.  Section by section, the Act does more than require open meetings.  The overall purpose of the Act is "to prohibit secret deliberation" (
People ex rel. Difanis v. Barr
, 83 Ill. 2d 191, 202, 414 N.E.2d 731, 735 (1980)), and to implement that broad requirement of openness, the Act imposes a number of subsidiary requirements.  For example, it provides:  "All public bodies shall keep written minutes of all their meetings, 
whether open or closed
."  (Emphasis added.)  5 ILCS 120/2.06(a) (West 2002).  Thus, the complete openness, or lack of secrecy, of a meeting will not save it from violating the Act if the public body failed to keep minutes of the meeting.  Convenience of place is another subsidiary requirement (5 ILCS 120/2.01 (West 2002)), and an open meeting in an inconvenient place violates the Act.

Convenience of place was not even an issue in 
Graf
, and its facts do not remotely resemble those in this case.  In 
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811, the plaintiffs argued an annexation of land was invalid under the Act because one of the trustees who had voted in favor of the annexation had participated in the meeting by telephone rather than in person.  Thus, according to the plaintiffs, the trustee did not fully participate in the meeting, and the plaintiffs were denied the opportunity "to fully express their views to this trustee."  
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811.  According to the plaintiffs, the purpose of the Act was "to 'allow full public participation' in meetings."  
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811.

The Second District held that the Act had a different purpose.  The appellate court explained:  

"[T]he Act itself states that its purpose is to ensure that the actions of public bodies 'be taken openly and that their deliberations be conducted openly.'  5 ILCS 120/1 (West 1998).  No reasonable construction of the Act's statement of purpose confers a right upon the plaintiffs to participate in a public hearing.  Rather, the Act's purpose is satisfied so long as meetings are not conducted in secrecy.  
Plaintiffs do not argue that they were unable to perceive what was taking place in the meeting
."  (Emphasis added.)  
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811.

In the present case, plaintiffs do not complain of being forbidden to 
participate
 in the meeting of June 13, 2002 (although they had hoped the board, in its discretion, would have allowed them to do so).  Rather, they complain that the inconvenience of the location barred them (and approximately 100 other members of the public) from 
attending
 the meeting.  Unlike the plaintiffs in 
Graf
, plaintiffs in this case could neither hear nor see the meeting.  American Disposal asserts that the distinction between "attendance" and "participation" is "purely semantic."  We disagree.  Merely attending a meeting means being a spectator.  A member of the public who participates in a meeting does more than attend; he or she takes part in the discussion.  
Graf
, 321 Ill. App. 3d at 907, 748 N.E.2d at 811 (making a distinction between "perceiv[ing] what was taking place in the meeting" and "participating" in the meeting); 
Wyse
, 1995 WL 547784, at *4 ("access does not necessarily include participation").

 Because no Illinois case explains what a "convenient" place is within the meaning of section 2.01, defendants cite two foreign cases, 
Wyse
 and 
Lindahl v. Independent School District No. 306
, 270 Minn. 164, 133 N.W.2d 23 (1965), which interpret statutes analogous to the Act.  (We note 
Wyse
 is an unpublished opinion issued in 1995, prior to the Ohio Supreme Court's rule change that stated such opinions issued "after the effective date of these rules may be cited as legal authority and weighted as deemed appropriate by the courts" (Ohio Rev. Code Ann. Rep. R. 4(B) (West 2003)) (adopted eff. May 1, 2002); prior to adoption of that rule, unpublished opinions were not controlling except as specified and were persuasive only in the judicial district in which rendered (3 Ohio St. 3d Rep. Rs. 2(G)(1), (G)(2) (1983)).)  It does not appear, however, that either the Ohio or Minnesota statute contained an explicit requirement that the location of the meeting be "convenient"; those statutes merely required that the meeting be "open."  
Wyse
, 1995 WL 547784, at *4; 
Lindahl
, 270 Minn. at 167, 133 N.W.2d at 26.  Thus, we do not find 
Wyse
 and 
Lindahl
 to be helpful on the question of where public meetings should be held under section 2.01 of the Act.

According to our research, only two other states besides Illinois have open-meetings legislation explicitly requiring "convenience" of location.  Ky. Rev. Stat. Ann. §61.820 (Banks-Baldwin 2002) ("All meetings of all public agencies *** shall be held at specified times and places which are convenient to the public"); Okla. Stat. Ann. tit. 25, §303 (West 2002) ("All meetings of public bodies *** shall be held at specified times and places which are convenient to the public and shall be open to the public").  Other than a case holding that a locked courthouse on a holiday is not a "convenient" location for a public meeting (
Rogers v. Excise Board
, 701 P.2d 754, 761 (Okla. 1984)), we are aware of no cases explaining the meaning of "convenient" in those statutes.

The Act does not define "convenient."  Unless a statute specially defines a word, we give the word its plain and ordinary meaning.  
Champaign Township v. County of Champaign
, 331 Ill. App. 3d 582, 587, 772 N.E.2d 315, 320 (2002).  
"Convenient" means "suited to personal comfort or to easy performance" or "affording accommodation or advantage."  Merriam-Webster's Collegiate Dictionary 252 (10th ed. 2000).  A meeting can be open in the sense that no one is prohibited from attending it, but it can be held in such an ill-suited, unaccommodating, unadvantageous place that members of the public, as a practical matter, would be deterred from attending it.

The legislature does not specify how far a public agency must go in accommodating members of the public who wish to attend public meetings.  "[W]e must interpret statutes in a manner that avoids absurd results."  
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 59, 759 N.E.2d 533, 555 (2001).  It would be unreasonable to suppose the legislature intended, as plaintiffs demand in their first-amended complaint, that public bodies hold their meetings "at such locations as are sufficient to accommodate 
all
 interested members of the public, such that they may see and hear all proceedings in reasonable comfort and safety."  (Emphasis added.)  If enough "interested members of the public" showed up--in a mass demonstration, for instance--the business of government would come to a standstill for lack of a venue large enough to accommodate such crowds.  "This narrow view would permit invalidation of any action by a public body by the simple method of overflowing" the meeting room.  
Guiterrez
, 96 N.M. at 400, 631 P.2d at 306.  "[T]o be safe," the public body "would have to hire [a] football stadium or hold its meetings in a wide open space."  
Guiterrez
, 96 N.M. at 400, 631 P.2d at 306; see also 
Maxwell v. Carney
, 273 Ga. 864, 865, 548 S.E.2d 293, 295 (2001) ("The superior court's injunction is too broad insofar as it requires the commission to provide adequate seating to enable 
all
 members of the public to attend the meeting.  The superior court would have the commission provide seating for everyone in the county if they all decided to attend a meeting" (emphasis in original)).

Section 2.01 requires a place that is "convenient" not merely to members of the public who show up for the meeting but to the "public" as a whole.  5 ILCS 120/2.01 (West 2002).  Renting a football stadium for public meetings might be inconvenient, or unadvantageous, to the public as a whole because of the cost.  By the same token, holding public meetings in a small room might be inconvenient to the public because persons wanting to attend would have difficulty gaining admittance.  The concept of public convenience seems to imply a rule of reasonableness, not "absolute accessibility" but "reasonable accessibility."  See 
State ex rel. Badke v. Village Board of the Village of Greendale
, 173 Wis. 2d 553, 579, 494 N.W.2d 408, 418 (1993) (interpreting a statute requiring that the meeting place be "reasonably accessible").  

In the present case, a "convenient" meeting place lay somewhere between the extremes of a broom closet and a football stadium.  Just where it lay on that spectrum was an issue of fact that the trial court should not have resolved on the pleadings.  Reasonableness is generally a question of fact rather than a question of law, unless reasonable minds could not differ.  
Tassan v. United Development Co.
, 88 Ill. App. 3d 581, 590-91, 410 N.E.2d 902, 910-11 (1980).  Under the allegations of the first-amended complaint, a reasonable trier of fact could find that the boardroom was an inconvenient place for the June 13, 2002, meeting.  That the board typically held its meetings in the boardroom does not end the inquiry; section 2.01 does not allow custom to trump public convenience.  Plaintiffs have alleged that the board knew, at least a week before the June 13, 2002, meeting, that the boardroom would be too small for the numbers of citizens who wished to attend; that larger, alternative venues were available; and that Jacobson resolutely refused to hold the meeting in a larger venue because he wanted to make attendance by the public inconvenient.  Given those facts, along with the alleged preferential admission of Allied Waste employees, we find that plaintiffs have pleaded a violation of the Act.  
   

            
 III. CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment.

Reversed.

KNECHT, P.J., and MYERSCOUGH, J., concur.