The Honorable Larry Jegley Prosecuting Attorney Sixth Judicial District 122 South Broadway Little Rock, Arkansas 72201
Dear Mr. Jegley:
I am writing in response to your request for an opinion on a matter involving public access to public meetings under the "Arkansas Freedom of Information Act," codified at A.C.A. §§25-19-101 to -109 (Repl. 2002 and Supp. 2005). Specifically, you relay the following facts:
 [T]he Arkansas State Medical Board met on July 6th and 7th in its hearing room. With the Board, staff, and public attendees in the room, it filled up, and some members of the public could not attend, view, or hear the proceedings. As an aside, the Board says the number of people in the room and adjacent area was at maximum capacity per the fire code.
You state that "[t]he question is, under these facts, was there a violation of the Arkansas Freedom of Information Act in members of the public being unable to attend a public meeting due to space limitations?"
RESPONSE
The question you have posed is one of fact, dependent upon the reasonableness of the access to the meeting in question, and, to the extent your question inquires about a criminal violation of the act, upon whether the standard for a criminal violation has been met. I am not empowered as a fact-finder in the issuance of Attorney General opinions, and as a consequence, cannot resolve the factual issue of whether a violation of the FOIA occurred. In addition, as I recently explained to you in Op. Att'y Gen.2006-086, in response to another question of whether criminal prosecution would lie under the FOIA, "I cannot make any prosecutorial judgments with regard to this matter, due to the intensive fact finding that necessarily attends the decision, and in recognition of the general principle of prosecutorial discretion." As the locally elected Prosecuting Attorney for the Sixth Judicial District, the decision to institute criminal charges is within your sole discretion. I have set out the relevant law on the question below, however.
With regard to the requirement of open public meetings, The Arkansas Freedom of Information Act provides:
 (a) Except as otherwise specifically provided by law, all meetings, formal or informal, special or regular, of the governing bodies of all municipalities, counties, townships, and school districts and all boards, bureaus, commissions, or organizations of the State of Arkansas, except grand juries, supported wholly or in part by public funds or expending public funds, shall be public meetings.
A.C.A. § 25-19-106(a) (Supp. 2005).
With regard to the criminal penalty for violation of the FOIA, A.C.A. § 25-19-104 (Supp. 2005), provides:
 Any person who negligently violates any of the provisions of this chapter shall be guilty of a Class C misdemeanor.
I assume that in asking whether the facts you describe constitute a "violation" of the FOIA, you are referring to possible imposition of the penalty above.
For purposes of the 25-19-104 penalty, the legal definition of "negligently" is found at A.C.A. § 5-2-202(4) (Repl. 2006), which provides as follows:
 (4) "NEGLIGENTLY."
 (A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.
 (B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.
With regard to the FOIA's requirements for meeting facilities, as one of my predecessors stated in Op. Att'y Gen. 93-299:
 As to the size and suitability of meeting facilities for public meetings, there is no provision of the FOIA which specifically addresses such issues. The FOIA grants to individuals the right to attend a public meeting, but even this right is subject to reasonable restrictions, such as limited seating capacity. See J. Watkins, The Arkansas Freedom of Information Act (m m Press, 1988) at 173. Presumably, however, a governing body could not choose to hold a meeting at a location which lacked the seating capacity for the number of individuals reasonably anticipated to attend if such a decision was made with the intent to thwart the requirements and spirit of the FOIA.
Id. at 3. See also, Ops. Att'y. Gen. 2001-363 and 96-317.
The reasonableness of the access that is afforded must be assessed on a case-by-case basis. Id.
Leading commentators on the FOIA have summarized the law on this issue as follows:
 The right to attend a meeting is subject to reasonable restrictions, such as a limited seating capacity or procedural regulations aimed at ensuring that an agency business is conducted in an orderly manner. Although a governing body cannot be expected to provide seating for everyone who wishes to attend a meeting, it cannot thwart the FOIA by choosing to meet at a location, other than its regular meeting site, which "lack[s] the seating capacity for the number of individuals reasonably anticipated to attend. . . ." The question is whether an agency has provided reasonable access, under the circumstances, to those persons wishing to attend and has not systematically excluded or arbitrarily refused admittance to any individuals. . . .
Watkins and Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT, (m 
m Press 2004), at 327-28 (footnotes omitted.)
The relevant inquiry in this instance will therefore involve an analysis of whether the access afforded was reasonable under the circumstances and to what degree the conduct meets the legal test for imposition of criminal liability under A.C.A. § 25-19-104 and § 5-5-202(4)(A) and (B). Relevant evidence in making this determination may include any facts tending to show that the Board chose a location it knew would not have the necessary seating capacity for the persons reasonably expected to attend, and whether the Board systematically or arbitrarily refused admittance to any individuals. Although you have enclosed with your request several letters describing the events that took place during the meeting in question, I am not in a position to evaluate, determine, or make legal conclusions concerning what may be disputed facts regarding this incident. I can, in an effort to be helpful, however, outline the facts of several analogous cases from other jurisdictions and set out the relevant court rulings in those cases. There are no relevant cases from Arkansas addressing the issue.
Three cases from other jurisdictions may be of help in analyzing the issue.
The first is Gerwin v. Livingston County Board,345 Ill. App. 3d 352, 802 N.E.2d 410 (2003). At issue in Gerwin was a meeting of a county board to discuss the expansion of a landfill. There were allegations that the Board was aware, from high attendance at earlier committee meetings on the subject, that a large number of citizens would attend the board's June meeting. At one point, one board member "expressed concern about the lack of space for spectators in the board room and asked if there was any possibility of changing the location for the June board meeting." The board chairman, however, "suggested it would be difficult to change at this point in time." Id. at 412. It was also alleged that the Board refused the request of news organizations and members of the public to obtain a different, larger venue for the meeting, which had been done in the past with regard to other subjects before the board. There were also allegations that agents of the landfill operator were allowed to enter the meeting room despite having arrived later than members of the public who were required to stand in the hall. The issue before the appellate court was whether the board meeting was "convenient" to the public under the applicable Illinois statute. The court held that the plaintiffs had pleaded facts sufficient to survive a motion to dismiss, and reversed the trial court's granting of such a motion.
The second case is State ex rel. Badke v. Village of Greendale,173 Wis. 2d 553, 494 N.W.2d 408 (1993). At issue in Badke was a meeting of the Village Board to consider a special use permit to construct a 364 unit apartment complex on a 56 acre, vacant parcel of land. As noted by the court, the Village Board met for its meeting in the village hall, a facility which held 55 people. The village hall also had a foyer that could accommodate approximately 20 people. Prior to the day of the meeting, the Village Board received a petition signed by more than 1,600 village residents opposing the planned development. Additionally, a resident had sent the village manager a letter asking that the village hold the meeting at another site. Police were assigned to the meeting for crowd control. The Supreme Court of Wisconsin applied the relevant statute in that state, which provided that: "all meetings . . . shall be publicly held in places reasonably accessible to members of the public and shall be open to all citizens at all times unless otherwise expressly provided by law." The Wisconsin Supreme Court held that "[r]ead together . . . the two phrases mean that a governmental body must meet in a facility which gives reasonable public access, not total access, and that it may not systematically exclude or arbitrarily refuse admittance to any individual." Id. at 418. Although a petition had been signed by 1,600 village residents, the court concluded that there was no evidence in the record to indicate that even a small fraction of that number (perhaps 5 percent) attempted to attend the meeting. The court found that "[a]t best . . . no more than 3 people were ultimately denied admission" and that "[t]he press attended the meeting." The court found that although the plaintiff claimed that many in attendance could not hear the proceedings, "the record indicate[d] that to the extent hearing was difficult, it was intermittent and due to some disruptive attendees." Id. at 419. The court therefore found no violation of the Wisconsin Open Meeting Law.
The final case that may be of help in analyzing the question isGutierrez v. City of Albuquerque, 96 N.M. 398, 631 P.2d 304
(1981). In Gutierrez, at issue was a city council meeting held to discuss an application to sell alcoholic beverages within three hundred feet of a school. The New Mexico Supreme Court outlined the facts as follows:
 Elliott's application for permission to sell alcoholic beverages within 300 feet of a school generated a great deal of public interest and controversy. An overflow crowd arrived to attend the City Council meeting of July 28, 1980, at which Elliott's application was considered. The Council Chambers were filled in excess of the maximum occupant load of 156 persons. The rest of the crowd (including Petitioners) had to remain outside the Chambers. As persons left the Chambers, others were allowed to enter. Loudspeakers were set up outside the Chambers and were operative during at least a portion of the meeting so that those outside the Chambers could listen to the proceedings. The meeting was broadcast on an Albuquerque radio station and received extensive media coverage. A motion was made to move the meeting to a larger room at the beginning of the meeting, but was denied for a variety of reasons, including inadequate sound systems at alternative locations. Members of the public who registered were allowed to present their views to the Council. Proponents of the agenda items were allowed one hour to present their views; opponents of the items were ultimately allowed one hour and fifteen minutes to present their views.
Id. at 305.
The relevant New Mexico statute provided that: "All meetings of any public body, except the legislature, shall be public meetings and all persons so desiring shall be permitted to attend andlisten to the deliberations and proceedings." (Emphasis by court). In response to the plaintiff's contention that "all must be in the room or in the presence of the Council members, regardless of the size of the crowd and the limitations of the meeting hall," the court stated that "To `attend and listen' is equally susceptible of an interpretation that persons desiring to attend shall have the opportunity to do so, that no one will be systematically excluded or arbitrarily refused admittance, and that the meeting will not be `closed' to the public." The court concluded as follows, with regard to the facts in Gutierrez:
 Construing the statute consistent with these policies, we conclude that the words used mean only that the governmental entity must allow reasonable public access for those who wish to attend and listen to the proceedings. We hold that the City Council meeting fully met the requirements of the Open Meetings Act as we have construed it. The meeting was held in a hall designed to accommodate a large number of spectators. When the size of the crowd exceeded the capacity of the hall, every effort was made to allow those who could not gain entrance to listen to the proceedings. The City Council even went beyond the requirements of the Open Meetings Act and allowed members of the public to address the Council and present their views for over two hours. A meeting could hardly be more open or more public.
Id. at 307.
Although these cases did not involve criminal violations, they may be of some assistance in outlining the important factors to consider in analyzing whether a particular set of facts gives rise to a violation. Again, I cannot make that factual determination.
One additional point should be mentioned. In the correspondence attached to your request, it is indicated that one person was excluded from the meeting based upon the fact that he might be called as a witness in the hearing. Prior to the hearing, the attorneys for the parties apparently invoked the "Rule." See
Ark. R. Evid. 615 ("At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion . . ."). The Arkansas Supreme Court has indicated, although not squarely held, that the "Rule" may not be invoked in administrative hearings held by state agencies that are subject to the FOIA. In Williams v. Arkansas State Board of PhysicalTherapy, 353 Ark. 778, 120 S.W.3d 581 (2003), a physical therapist, in appealing disciplinary action taken against him by the Board, argued that the evidence was not "valid, legal and persuasive," noting in part that his counsel's motion to invoke the "Rule" was denied by the Board. The Arkansas Supreme Court, after setting out the "Rule," stated as follows:
 However, under Arkansas Rule of Evidence 101, the rules "govern proceedings in the courts of this State to the extent and with the exceptions stated in Rule 1101." Ark. R. Evid. 101 (2002). This court has acknowledged that the rules of evidence are applicable to administrative proceedings, but are more relaxed. Arkansas Cont. Lic. Bd. V. Butler Constr. Co., 295 Ark. 223, 748 S.W.2d 129 (1988). However, the Arkansas Freedom of Information Act expressly provides that except as otherwise provided for by law, all meetings of boards of the State of Arkansas shall be public meetings. Ark. Code Ann. § 25-19-106 (Repl. 2002).
Id. at 783-84.
This legal passage may also inform your determination as to whether, as a factual matter, the situation you describe constitutes a violation of the FOIA under the applicable criminal standard in A.C.A. § 25-19-104. Again, I am not authorized, nor situated to make such factual determination.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh