2022 IL App (1st) 211131-U

No. 1-21-1131

Fourth Division
August 25, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

|  |  |
|---|---|
| STATION PLACE TOWNHOUSE CONDOMINIUM ASSOCIATION, a Not-for-Profit Corporation; PRAIRIE STREET TOWNHOMES CONDOMINIUM ASSOCIATION, a Not-for-Profit Corporation; BRIAN GRAVDAL; MICHAEL PURPURA; VIRGINIA PUPILLO; DONALD ANDREW; and CHRISTOPHER JOHNSON, | |
| Plaintiffs, | Appeal from the Circuit Court of Cook County. |
| v. | No. 2020 CH 04400 |
| THE VILLAGE OF GLENVIEW, | The Honorable Alison C. Conlon, |
| Defendant-Appellee | Judge Presiding. |
| (Station Place Townhouse Condominium Association, a Not-for-Profit Corporation; Prairie Street Townhomes Condominium Association, a Not-for-Profit Corporation; Michael Purpura; Virginia Pupillo; and Christopher Johnson, Plaintiffs-Appellants). | |

_____

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1 *Held:* The circuit court's judgment dismissing plaintiffs' amended and second amended complaints is affirmed, where (1) as a home rule unit, the defendant municipality was not required to comply with state statutes governing the sale of surplus real estate; (2) plaintiffs failed to demonstrate that the municipality's approval of the developer's zoning requests deprived them of procedural due process; (3) plaintiffs failed to state a cause of action for deprivation of their substantive due process rights; and (4) plaintiffs sought impermissible relief for a violation of the Open Meetings Act.

¶ 2 In 2018, the defendant Village of Glenview (Village) entered into a purchase and sale agreement (PSA) to sell Village-owned property to a private developer. Pursuant to the PSA, the developer sought to develop a mixed-use building on the property and requested zoning and development approvals from the Village to do so. In early 2020, the Village approved an ordinance granting the developer's zoning application. Shortly thereafter, plaintiffs, who are condominium associations and individual unit owners of two condominium developments near the property,[1] filed a complaint for declaratory judgment, alleging that (1) the PSA was void because it did not follow the requirements of state law, (2) the ordinance approving the zoning application violated plaintiffs' procedural and substantive due process rights, and (3) certain meetings related to the development violated the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2018)). After several amendments, plaintiffs' complaint was dismissed in its entirety and plaintiffs now appeal. For the reasons set forth below, we affirm the circuit court's judgment.

---

[1] While all plaintiffs were originally named as appellants in the instant appeal, plaintiffs Brian Gravdal and Donald Andrew filed a motion to dismiss the appeal as pertains to them, which we granted on July 8, 2022.

¶ 3                                    BACKGROUND

¶ 4                                    *Property*

¶ 5          The property at issue (the property) is located at 1850 Glenview Road, which is on the northwest corner of Glenview Road and Pine Street in the downtown area of the Village. Prior to the sale of the property, a building that had formerly housed a "Bess Hardware" store was located on the premises, but the building was purportedly demolished during the pendency of the instant litigation. Metra railroad tracks run parallel to the west side of the property, along Depot Street, and a Metra station is located adjacent to the property. Plaintiff Station Place Townhouse Condominium Association (Station Place), a four-building condominium development, is located directly north of the property, and two of its buildings share walls with the former Bess Hardware site. Plaintiff Prairie Street Townhomes Condominium Association (Prairie Street) is a single-building condominium located one block north of the former Bess Hardware site.

¶ 6          The former owner of the Bess Hardware site closed the store in 2010, and actively marketed the property for sale for seven years. Ultimately, the Village purchased the site of the former Bess Hardware store in January 2017 for approximately $2.2 million. The Village also obtained 11,381 square feet of adjacent land that was formerly owned by Metra, which it estimated as valued at $284,525.

¶ 7                              *PSA and Development Process*

¶ 8          In August 2018, the Village entered into a PSA to sell the property to The Drake Group, Ltd. (developer), a private developer, for approximately $1.8 million. According to plaintiffs, the decision to select the developer was made in executive session by the Village board of trustees, and the terms of the PSA were negotiated in secret. Plaintiffs further contend that the

Village did not independently appraise the property that it proposed to sell to the developer. The PSA was later amended in April 2019 to add a portion of a right-of-way on Glenview Road to the sale, and as part of the amended PSA, the purchase price was lowered to approximately $1.5 million.[2] The Village estimated the value of the right-of-way as $26,750.

¶ 9    Pursuant to the PSA, prior to closing on the sale of the property, the developer worked to effectuate rezoning, site plan review, and preliminary subdivision approvals for the property, which was intended to become the site of a mixed-use development. Specifically, the developer sought (1) a perimeter yard of 0 feet instead of a minimum of 50 feet; (2) a building height of 65.50 feet instead of a maximum of 50 feet; (3) a parking ratio of 1.17 spaces per unit instead of a minimum of 1.5 spaces per unit; and (4) revisions to the Village's "Streetscape Plan" to permit the removal of four mature honest locust trees. The changes sought by the developer also required the removal of a total of 97 parking spaces, including five parking spaces along Depot Street maintained by Station Place pursuant to a licensing agreement with Metra.

¶ 10    As part of the approval process, the Village referred the matter to its plan commission, which published a notice on October 3, 2019, of an upcoming hearing on the matter. Since the adequacy of the notice is at issue on appeal, we set forth the notice in full:

"PROPOSED PLANNED DEVELOPMENT AND VACATION OF PUBLIC RIGHT-OF-WAY

VILLAGE OF GLENVIEW

*PUBLIC NOTICE*

---

[2] The purchase price of $1.8 million remained the same, but the terms of the amended PSA provided that the Village would hold $274,482 in escrow and would return the funds to the developer if the developer showed that it had obtained tenants to lease the retail space on the first floor of the proposed development.

*P2019-041*

Notice is hereby given that a public hearing will be held by the Glenview Plan Commission to consider a petition requesting a Vacation of Right-of-Way, Planned Development with Variations, Final Site Plan Review, Preliminary Subdivision, and other such relief related to the proposed development of certain property hereinafter described. The meeting will be held on Tuesday, October 22, 2019 at 7:00 P.M., in the Village Hall, 2500 East Lake Avenue, Glenview, Illinois.

The public right-of-way to be vacated comprises part of Glenview Road and is described as follows:

[Legal description]

The proposed development site is commonly known as *1850 Glenview Road* and is legally described as:

[Legal description]

The applicant, The Drake Group, requests approval to construct a mixed-use development, including first floor retail floor area, parking, and residential amenities including a lobby and leasing office and seventy-two (72) apartment units, upon the subject property.

All persons interested should attend and will be given an opportunity to be heard. For additional information regarding this case, please contact Tony Repp, Senior Planner, at (847) ***." (Emphases in original.)

¶ 11        The plan commission held four hearings on the matter between October 2019 and January 2020. At the hearings, the commissioners and members of the public raised numerous concerns with the proposed development, including its size, its impact on traffic and parking, its impact

on safety, and its changes to the local streetscape. Ultimately, on January 28, 2020, the plan commission voted 3 to 2 (with one member absent) to recommend approval of the developer's plan to build a mixed-use building with 68 apartments and commercial space on the ground floor. The matter then proceeded to the Village's board of trustees, which approved an ordinance granting the developer's request for rezoning and subsequently approved the developer's proposed project; both passed by a 4 to 2 vote.

¶ 12                    *Complaint and Motion to Dismiss*

¶ 13        On June 1, 2020, plaintiffs filed a complaint for declaratory judgment, challenging both the PSA and the approval process. The complaint was amended twice, and both the amended verified complaint and the second amended verified complaint are at issue on appeal. Count I of the amended complaint sought an order enforcing the provisions of the PSA that required the developer to reimburse the Village for certain expenses. Count II alleged that the PSA was invalid, as it violated the terms of the Illinois Municipal Code governing the sale of municipality-owned surplus real estate. See 65 ILCS 5/11-76-4.1 (West 2018). Counts III and IV alleged that the rezoning process violated plaintiffs' procedural (count III) and substantive (count IV) due process rights, as the public was not adequately informed of the proposed rezoning and the rezoning ordinance approved by the Village's board of trustees was arbitrary and capricious. Count V alleged that the Village's use of virtual hearings in June and July 2020 violated the Open Meetings Act. Finally, count VI sought an injunction preventing the project from progressing while the litigation was ongoing.

¶ 14        On August 24, 2020, the Village filed a combined motion to dismiss the amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)). The Village claimed that count I should be dismissed under section 2-619

of the Code (735 ILCS 5/2-619 (West 2018)), as plaintiffs lacked standing to enforce the PSA. The Village further claimed that the remaining counts should be dismissed under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)), as (1) the Village was not required to comply with the Illinois Municipal Code in selling the property since it was a home rule unit; (2) plaintiffs were adequately informed of the rezoning process and failed to set forth any other violations of their procedural due process rights; (3) plaintiffs had not alleged sufficient facts to demonstrate a deprivation of their substantive due process rights; and (4) the Village's virtual meetings were held in compliance with the recent amendments to the Open Meetings Act enacted in light of the pandemic. Additionally, the Village contended that counts III and V should also be dismissed under section 2-619 of the Code, as (1) plaintiffs were well-represented at the public hearings on the zoning issue and they were not denied any opportunity to voice their opposition, and (2) the agendas and meeting minutes from the challenged meetings demonstrated that they were open to the public.

¶ 15        On January 8, 2021, the circuit court granted the Village's motion to dismiss in part and denied it in part. The court dismissed counts I, II, III, and portions of count V with prejudice, and denied count IV without prejudice and with leave to re-plead.[3] With respect to count II, the circuit court found that, as a home rule unit, the Village was not required to comply with the Illinois Municipal Code when selling its municipality-owned real property, as such a matter pertained to its local government and affairs. With respect to count III, the circuit court found that plaintiffs were not deprived of procedural due process, as the notice published by the Village adequately informed the public of the nature of the changes sought by the developer and members of the public were afforded the opportunity to be heard at the meetings on the

---

[3] The dismissal of count I is not at issue on appeal.

issue. The court further found that the meeting minutes showed that residents did, in fact, object to the proposed development and raised a number of concerns during the meetings. With respect to count IV, the circuit court found that plaintiffs had not adequately set forth facts supporting their claim that they were deprived of substantive due process, but permitted them to re-plead the count to provide additional factual support for their claim. Finally, with respect to count V, the circuit court struck with prejudice any allegations that the Village was not permitted to hold virtual meetings, given amendments to the Open Meetings Act after the COVID-19 pandemic, as well as allegations concerning the adequacy of the information provided by the Village on its website prior to the meetings. The court, however, found that plaintiffs' allegations that the Village had posted incorrect login information could form the basis for a violation of the Open Meetings Act, so denied the motion to dismiss as to those portions of count V.

¶ 16                    *Second Amended Complaint and Motion to Dismiss*

¶ 17        On March 5, 2021, plaintiffs filed their second amended verified complaint, which re-pleaded counts IV (substantive due process) and V (Open Meetings Act). In count IV, plaintiffs alleged that the zoning ordinance permitting the development was unreasonable and arbitrary. Specifically, plaintiffs alleged that the proposed development would harm them in a number of ways: (1) the construction of a building that is too large for the site, with an "imposing" structure that would "hover" over plaintiff Station Place; (2) the dramatic reduction of public parking, which would result in increased traffic flow and would raise safety issues for residents; (3) the loss of commuter parking for Metra on the west side of the Station Place property, which had been maintained at Station Place's expense for over 20 years, in favor of the development's private use; (4) the loss of public parking for plaintiffs' residents and guests

8

due to the development's inadequate parking; (5) the noise of service vehicles collecting trash and making deliveries, which would take place directly in front of the Station Place property; (6) the diminution in value and a loss of quiet enjoyment of property, due to the "sudden and immediate" increase in neighborhood density; (7) the disregard for open space requirements; and (8) the increased flooding risk due to the development's private stormwater detention vault being located under a public street. Plaintiffs also alleged that the development did not comport with the Village's " 'Downtown Revitalization Plan' " and instead was "not [in] the public interest, is in disharmony with the comprehensive plan of the Village, and is an advantageous development only to a proposed developer, at the expense of existing property owners." Plaintiffs alleged that there was no community need for such a development, which would contribute to increased congestion on local roads, dangerously impact public safety, and overcrowd local schools.

¶ 18        In count V, plaintiffs alleged that the login information for the June 24, 2020, meeting of the Village's appearance commission was inaccurate, which prevented at least two residents from participating in the meeting. Plaintiffs further alleged that at July 21, 2020, and January 5, 2021, meetings of the board of trustees, "public access to the meeting was limited" by the Village's choice to conduct the meetings as "webinars," which prevented attendees from being able to observe who else was present. Plaintiffs requested that the actions taken at each of these meetings be stricken as void, and that the Village be ordered to conduct the meetings in compliance with the Open Meetings Act.

¶ 19        On April 8, 2021, the Village filed a motion to dismiss plaintiffs' second amended complaint pursuant to section 2-615 of the Code. The Village contended that plaintiffs had

failed to set forth sufficient facts to state a cause of action on count IV and sought unavailable relief on count V and, therefore, the complaint should be dismissed with prejudice.

¶ 20      On August 12, 2021, the circuit court entered an order granting the Village's motion to dismiss. With respect to count IV, the court found that plaintiffs' allegations were still insufficient to state a cause of action for violations of their substantive due process rights. The court found that plaintiffs' allegations were conclusory and were sometimes contradicted by other allegations of the complaint; for instance, the court noted that another nearby development was the same height as the proposed development but had twice the number of residential units, which undermined plaintiffs' argument about the character of the area. The court also found that the zoning of the proposed development was consistent with the zoning of nearby properties, which were designated as "D-D Downtown Development," a designation which was intended to create mixed-use, walkable neighborhoods.

¶ 21      With respect to count V, the court found that the Open Meetings Act did not permit the relief that plaintiff sought, namely, voiding the actions taken at an open meeting. Instead, the Open Meetings Act permitted voiding actions taken only at "closed" meetings. The court further found that the allegedly improper actions taken by the Village during its meetings did not violate the Open Meetings Act; for instance, there was no requirement that attendees be able to observe each other. The court therefore dismissed counts IV and V with prejudice; as count VI for injunctive relief was necessarily predicated on the validity of the other counts, the court dismissed that count as well, resulting in the dismissal of the entirety of the second amended complaint.

¶ 22      Plaintiffs filed a timely notice of appeal, and this appeal follows.

¶ 23                                                    ANALYSIS

¶ 24        On appeal, plaintiffs contend that the circuit court erred in dismissing counts II, III, IV, and V of their complaints.

¶ 25                                            *Standard of Review*

¶ 26        The Village's motions to dismiss were based on both sections 2-615 and 2-619 of the Code. A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of the complaint by alleging defects on its face. *Young v. Bryco Arms*, 213 Ill. 2d 433, 440 (2004); *Wakulich v. Mraz*, 203 Ill. 2d 223, 228 (2003). The critical inquiry is whether the allegations in the complaint are sufficient to state a cause of action upon which relief may be granted. *Wakulich*, 203 Ill. 2d at 228. In making this determination, all well-pleaded facts in the complaint and all reasonable inferences that may be drawn from those facts are taken as true. *Young*, 213 Ill. 2d at 441. In addition, we construe the allegations in the complaint in the light most favorable to the plaintiff. *Id.* We review *de novo* an order granting a section 2-615 motion to dismiss. *Id.* at 440; *Wakulich*, 203 Ill. 2d at 228. We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 27        A motion to dismiss under section 2-619 admits the legal sufficiency of all well-pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be

dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). As with a section 2-615 motion, for a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc.*, 231 Ill. 2d at 488. Additionally, as with a section 2-615 dismissal, even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. See *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 28                                    *Count II: Validity of PSA*

¶ 29        Plaintiffs first contend that the circuit court erred in dismissing count II of their amended complaint, which alleged that the PSA was invalid since the Village did not comply with the Illinois Municipal Code in selling its surplus real property.

¶ 30        Section 11-76-4.1 of the Illinois Municipal Code governs the sale of surplus real estate. A municipality seeking to sell surplus public real estate must first obtain the value of the real estate through a written appraisal, which must be available for public inspection. 65 ILCS 5/11-76-4.1 (West 2018). The resolution authorizing the sale must be published "at the first opportunity following its passage," and must contain pertinent information concerning the size, use, and zoning of the real estate, as well as the terms of sale. *Id.* The corporate authorities of the municipality may accept "any contract proposal determined by them to be in the best

interest of the municipality" by a two-thirds vote, but "in no event" may the sales price be less than 80% of the appraised value of the property. *Id.*

¶ 31    Here, plaintiffs contend that the Village failed to comply with the requirements of the Illinois Municipal Code, as no appraisal was obtained and the sales price was less than 80% of the value of the property, as estimated by plaintiffs. The Village does not claim that it complied with the statutory requirements; instead, it argues that the statute is not applicable here as the Village is a home rule unit and the sale of municipality-owned property pertains to its local government and affairs.

¶ 32    Under the Illinois Constitution, except as limited by article VII, section 6 of the constitution, a home rule unit such as the Village "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). "Section 6(a) was written with the intention to give home rule units the broadest powers possible." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 30 (citing *Scadron v. City of Des Plaines*, 153 Ill. 2d 164, 174 (1992)). Furthermore, the constitution expressly provides that the "[p]owers and functions of home rule units shall be construed liberally." Ill. Const. 1970, art. VII, § 6(m).

¶ 33    The legislature has the authority to limit or deny the exercise of a municipality's home rule powers but, if it intends to do so, the statute must contain an express statement to that effect. *Palm*, 2013 IL 110505, ¶ 31 (citing *City of Evanston v. Create, Inc.*, 85 Ill. 2d 101, 108 (1981)). See also 5 ILCS 70/7 (West 2012) ("No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting

or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit."). In the absence of any such statement, the state and the municipality may govern concurrently. *Palm*, 2013 IL 110505, ¶ 31.

¶ 34     Our supreme court has consistently recognized that the home rule provisions of the Illinois Constitution are intended to reduce the circumstances under which home rule powers are preempted "by judicial interpretation of unexpressed legislative intention." (Internal quotation marks omitted.) *Id.* ¶ 34. This approach relies on the legislature, not the courts, to set forth the contours of a home rule unit's power, and our supreme court has instructed that courts should step in to compensate for legislative inaction "only in the clearest cases of oppression, injustice, or interference by local ordinances with vital state policies." (Emphasis and internal quotation marks omitted.) *Id.* Since the legislature is always able to protect state interests through express preemption, "only vital state interests would allow a court to decide that an exercise of home rule power does not pertain to local government and affairs." *City of Chicago v. StubHub, Inc.*, 2011 IL 111127, ¶ 22. "Accordingly, '[i]f a subject pertains to local government and affairs, and the legislature has not expressly preempted home rule, municipalities may exercise their power.' " *Palm*, 2013 IL 110505, ¶ 36 (quoting *StubHub*, 2011 IL 111127, ¶ 22 n.2).

¶ 35     We note that, in the case of the Illinois Municipal Code, there is no indication that the legislature intended to expressly preempt a municipality's home rule powers. As our supreme court has explained, any home rule preemption statute must specify clearly what it is preempting, which is not the case here. See *City of Chicago v. Roman*, 184 Ill. 2d 504, 516-17 (1998). Indeed, section 1-1-10 specifically recognizes that "[i]t is *** the policy of this State that home rule municipalities, [and] the officers, employees and agents of each may (1)

exercise any power and perform any function pertaining to their government and affairs or (2) exercise those powers within traditional areas of municipal activity, except as limited by the Illinois Constitution or a proper limiting statute, notwithstanding effects on competition." 65 ILCS 5/1-1-10 (West 2018). Thus, whether the Village was required to comply with section 11-76-4.1 depends on whether the sale of municipal real property is considered a function pertaining to its government and affairs.

¶ 36       This issue appears to have risen only rarely before our courts. The only case cited by either party which concerns the sale of municipal real property is *City of Carbondale ex rel. Ham v. Eckert*, 76 Ill. App. 3d 881 (1979). In that case, the city of Carbondale passed an ordinance authorizing the sale of certain parcels of real property pursuant to its home rule powers. The parcels were to be sold to private parties for redevelopment in accordance with the city's urban renewal plan, and the city entered into contracts for sale following private negotiations with the purchasers. *Id.* at 885-86. The plaintiffs subsequently filed a complaint, alleging that the disposition of the parcels was invalid since the contracts for sale were not conducted in accordance with a state statute requiring them to be sold to the highest bidder at public sale. *Id.* at 886. The circuit court dismissed the complaint, and the dismissal was affirmed on appeal. *Id.* at 890. In considering whether the sale of the property pertained to the government and affairs of the city, the *Eckert* court noted that the powers of home rule units were to be construed liberally and that "the terms of the grant of powers to home rule units were purposely left without definition so that they might be broad." *Id.* at 888. The court additionally found that "it does not require any liberal construction to conclude that urban renewal matters and the means by which redevelopment sales are entered into are matters of local concern which pertain to the affairs of the city wherein the problem necessitating the urban renewal efforts

15

exists." *Id.* After determining that no statute limited the city's authority to dispose of urban renewal property, the *Eckert* court concluded that the ordinances and the resulting sales were valid. *Id.* at 889.

¶ 37 Plaintiffs contend that *Eckert* is not applicable and, instead, point to language in *StubHub* which they claim demonstrates that issues concerning real property are matters of state, not local, concern. In *StubHub*, our supreme court was asked to consider the limits of a home rule unit's taxing powers. In setting forth the law concerning home rule, the supreme court observed: "Section 6(a) [of the Illinois Constitution] gives municipalities any powers pertaining to their governments and affairs, including the power to tax, but not the power over matters such as divorce, real property, trusts, and contracts." *StubHub*, 2011 IL 111127, ¶ 19 (citing 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621).[4] Plaintiffs claim that the reference to "real property" means that home rule units do not have the power to make their own rules concerning property matters. We do not find this argument persuasive.

¶ 38 Plaintiffs' interpretation was expressly rejected by our supreme court nearly 40 years ago, in *City of Carbondale v. Yehling*, 96 Ill. 2d 495 (1983). There, the defendants challenged the city of Carbondale's eminent domain ordinances, claiming that they exceeded the city's home rule authority. *Id.* at 496. The defendants pointed to the same language cited by the *StubHub* court, arguing that the comments from the constitutional convention showed that real property was a matter of state, not local, concern. *Id.* at 498-99. The supreme court disagreed, finding:

---

[4] The supreme court cited the committee comments from the Committee on Local Government at the constitutional convention, which provided: "[T]he powers of home-rule units relate to their own problems, not to those of the state or the nation. Their powers should not extend to such matters as divorce, real property law, trusts, contracts, etc. which are generally recognized as falling within the competence of state rather than local authorities." 7 Record of Proceedings, Sixth Illinois Constitutional Convention 1621.

"Certain powers are of a State or regional nature and do not therefore pertain to a home rule unit's affairs. We do not believe that the inclusion of real property law in the comments as to the matters to which home rule powers should not extend proscribe a home rule eminent domain ordinance. It is apparent that the language quoted in the context of the comments was a further clarification in leaving to the State those traditional areas of the law that are of statewide concern. Those comments reflect an intention that a divorce decree entered in Chicago will be honored in Waukegan, a contract signed in Evanston will not require additional consideration to constitute a valid contract in Peoria, and what is essential for a valid conveyance of a parcel of land in Joliet is also essential if the land is to be conveyed in Kankakee." *Id.* at 499.

See also *Palm*, 2013 IL 110505, ¶¶ 76-77 (Thomas, J., specially concurring) (the language from the constitutional convention has been construed very narrowly by the supreme court, and the court has consistently recognized the interest that municipalities have in regulating real property). Since the land in question was all located within the boundaries of Carbondale, the *Yehling* court found that the concerns of the city, including stimulating its economic development, were sufficiently local in character such that the city's purpose pertained to its local government and affairs.[5] *Yehling*, 96 Ill. 2d at 500. See also *City of Wheaton v. Sandberg*, 215 Ill. App. 3d 220, 224 (1991) (a municipality's exercise of eminent domain to eradicate blight and redevelop its business district is a valid home rule power).

---

[5] We note that, ultimately, the court found that the city had exceeded its home rule authority as its eminent domain ordinance impermissibly interfered in the State judicial system, imposing duties upon county and judicial officials and prescribing the order of certain court proceedings. *Yehling*, 96 Ill. 2d at 500-01. Thus, the court found that while the purpose of the ordinance pertained to its local government and affairs, the method of enforcement to carry out the proceedings was impermissible and, therefore, the ordinance as a whole could not be considered to pertain to the local affairs of the city. *Id.* at 501.

¶ 39    While *Yehling* involved the taking of real property, not its sale, we nevertheless find the supreme court's comments regarding the nature of real property matters to be instructive. As in *Yehling*, the entirety of the property at issue here is located within the boundaries of the Village. Likewise, although the instant action was not an exercise of its eminent domain powers, the record provides that the Village has a longstanding interest in revitalizing its downtown area, including issuing plans in 2006 (the "Downtown Revitalization Plan") and 2017 (the "Comprehensive Plan") to effectuate downtown development. Indeed, according to plaintiffs, the Bess Hardware site was specifically mentioned in the 2006 plan as a site that was intended for development in order to assist in the downtown revitalization. We therefore agree with the circuit court that selling a Village-owned parcel of property located in the downtown area to a developer seeking to build a mixed-use development implicates local concerns and the Village acted within its home rule powers in entering into the PSA, even in the absence of compliance with the Illinois Municipal Code.

¶ 40    We do not find persuasive plaintiffs' claims that the Village could only exercise its home rule powers if it had enacted an ordinance governing the sale of its real property. A municipality is not required to enact an ordinance in order to execute its home rule powers. *Beneficial Development Corp. v. City of Highland Park*, 161 Ill. 2d 321, 330 (1994). Instead, a home rule unit such as the Village "may exercise *any* power and perform *any* function pertaining to its government and affairs" (emphases added) (Ill. Const. 1970, art. VII, § 6(a)), except where expressly preempted by the legislature (*Palm*, 2013 IL 110505, ¶ 36). Here, that power included the authority to enter into the PSA to sell the property at issue to the developer. Accordingly, the circuit court properly dismissed count II of plaintiffs' complaint.

¶ 41                                *Count III: Procedural Due Process*

¶ 42        Plaintiffs next claim that the circuit court erred in dismissing count III of their amended

complaint, which alleged that they were deprived of their procedural due process rights during

the rezoning process. Specifically, plaintiffs claim that the Village failed to provide the public

with notice that the developer was seeking rezoning of the property and did not conduct a

"rezoning hearing." We note that the circuit court found this count deficient under both sections

2-615 and 2-619 of the Code, so we begin with a section 2-615 analysis, then proceed to a

section 2-619 analysis if necessary.

¶ 43        In the context of zoning matters, "notice" refers to the constitutional due process rights of

property owners to have a say in governmental decisions made about their own, or neighboring,

properties. *Sullivan v. Village of Glenview*, 2020 IL App (1st) 200142, ¶ 57. Accordingly, due

process requires that plaintiffs be apprised of the pendency of the zoning action and afforded

the opportunity to present their objections. *Passalino v. City of Zion*, 237 Ill. 2d 118, 125

(2010).

¶ 44        Here, the Village published a notice prior to the first hearing conducted by the plan

commission, which we have set out in full earlier in our order. See *infra* ¶ 10. Plaintiffs contend

that this notice did not adequately inform the public, or plaintiffs specifically, that the

developer was seeking a change in zoning, and the hearing conducted by the plan commission

was not a "zoning hearing." We do not find this argument persuasive.

¶ 45        The notice published by the Village indicates that the developer was requesting "a Vacation

of Right-of-Way, Planned Development with Variations, Final Site Plan Review, Preliminary

Subdivision, and other such relief related to the proposed development of certain property

hereinafter described." Later, the notice specifies that as to the former Bess Hardware site, the

developer "requests approval to construct a mixed-use development, including first floor retail floor area, parking, and residential amenities including a lobby and leasing office and seventy-two (72) apartment units, upon the subject property." Plaintiffs are correct that the notice does not use the word "zoning." As the Village points out, however, a "planned development" is a type of zoning district defined in the Glenview Municipal Code. Specifically, the Glenview Municipal Code provides that planning development districts "facilitate a more creative and efficient use of land than would otherwise be possible under traditional zoning regulations." Glenview Municipal Code § 98-491 (adopted Apr. 15, 2003). Thus, the fact that the notice indicated that the developer was seeking a "Planned Development with Variations" necessarily encompasses zoning matters, and we cannot find that the absence of the word "zoning" means that the public was not informed of the nature of the proceedings. Similarly, we cannot find that the plan commission's consideration of the "planned development" means that it failed to conduct a "rezoning hearing" as plaintiffs contend.

¶ 46    We also find unpersuasive plaintiffs' contention that inadequate notice prevented them from exercising their right to a written protest of the changes. Under the Illinois Municipal Code, in the event of a written protest by the owners of 20% of the frontage immediately adjoining the property at issue, any amendment to zoning regulations must be approved by two-thirds of the trustees. 65 ILCS 5/11-13-14 (West 2018). Plaintiffs claim that, had they been properly informed of the zoning changes sought by the developer, they could have formally protested and potentially changed the outcome of the proceeding. The record shows, however, that members of the public were well-informed about the proceedings and actively participated in the hearings. Indeed, while not yet representing plaintiffs in the instant litigation, plaintiffs' counsel spoke at each of the hearings as representative of 400 residents of the nearby

20

community, suggesting that there was a well-organized effort in opposition to the development. Consequently, we cannot find that plaintiffs were deprived of any rights by the notice published by the Village.

¶ 47                                    *Count IV: Substantive Due Process*

¶ 48        Plaintiffs' third claim is that the circuit court erred in dismissing count IV of their second amended complaint, which alleged that the Village's zoning decision violated their substantive due process rights. As an initial matter, we discuss the appropriate scope of our review, as plaintiffs contend that the circuit court and the Village applied the law applicable to a facial, not as-applied, constitutional challenge. A facial challenge to the constitutionality of a statute or ordinance "is the most difficult challenge to mount successfully," as the plaintiff must establish that there are no circumstances under which the statute or ordinance would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). By contrast, in an as-applied challenge, a plaintiff claims that the statute or ordinance is unconstitutional in the particular context in which the plaintiff acted or proposed to act, and the facts surrounding the plaintiff's particular circumstances are relevant to that determination. *Id.* at 306. If the plaintiff succeeds in an as-applied challenge, the statute or ordinance may be enjoined with respect to that plaintiff, while "a successful facial attack voids the enactment in its entirety and in all applications." *Id.* In either case, however, a court engages in a rational-basis review in analyzing a zoning ordinance. See *id.* at 315; *La Salle National Bank of Chicago v. Cook County*, 12 Ill. 2d 40, 46 (1957). Under this test, an ordinance will be upheld "if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable." *Napleton*, 229 Ill. 2d at 307. While plaintiffs suggest that rational-basis review is inappropriate in an as-applied challenge such as the one at issue in the instant case, our

supreme court has expressly found that this standard applies to zoning decisions subject to as-applied challenges. See *Napleton*, 229 Ill. 2d at 317.

¶ 49        Our supreme court has made clear that the validity of a zoning ordinance must be determined according to its own facts and circumstances. *La Salle*, 12 Ill. 2d at 46. In conducting such an analysis, however, the supreme court in *La Salle* identified a number of factors which may be taken into consideration in determining the validity of the ordinance as applied to a particular parcel of property. *Id.* These factors are commonly referred to as the "*La Salle* factors," and they include:

> "(1) The existing uses and zoning of nearby property [citations], (2) the extent to which property values are diminished by the particular zoning restrictions [citations], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public [citations], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner [citation], (5) the suitability of the subject property for the zoned purposes *** [citations], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. [Citations.]" *Id.* at 46-47.

Some courts also consider two other factors, set forth in *Sinclair Pipe Line Co. v. Village of Richton Park*, 19 Ill. 2d 370, 378 (1960): (1) the evidence of community need for the use proposed by the plaintiff and (2) the care with which the community has undertaken to plan its land use development. Our supreme court has made clear that no one factor is controlling. *La Salle*, 12 Ill. 2d at 47.

¶ 50    Here, plaintiffs do not contend that the circuit court failed to consider or improperly balanced the *La Salle* factors. Instead, they make two arguments: first, they claim that the circuit court ordered them to replead their substantive due process count in conformity with *Zeitz v. Village of Glenview*, 227 Ill. App. 3d 891 (1992), which they did, and therefore, that count should not have been dismissed. Second, they claim that the circuit court improperly relied on the recent opinion of *Strauss v. City of Chicago*, 2021 IL App (1st) 191977, in finding that they had not stated a cause of action. We do not find either of these arguments accurately represents the proceedings below, and do not find them persuasive in any event.

¶ 51    With respect to plaintiffs' first argument, their substantive due process count was originally dismissed pursuant to section 2-615 of the Code when the Village filed its motion to dismiss the amended complaint. During the hearing on the motion to dismiss, the circuit court found that plaintiffs "haven't pled enough specifics" in the amended complaint, pointing to a number of pleading defects and conclusory allegations. The court then considered whether to permit plaintiffs to replead the count, noting that many of the defects "could, in theory, be rectified." The court ultimately decided:

> "I see *** the attack being simply one of lack of factual specificity. And because that is a pleading defect, I will allow the plaintiffs one final opportunity to try to replead this. Any repleading must be done in conformity with [*Zeitz*]. I like that case because I think it involves much more factually specific allegations of the LaSalle Factors than they have here and I think it functions as a good template for pleadings expectations.
>
> So I would strongly encourage the plaintiffs to follow that case carefully if they do attempt to replead this count."

Thus, the circuit court's comments during the hearing make clear that it found that plaintiffs' allegations lacked specificity, and it pointed plaintiffs to a case that would "function[ ] as a good template" in repleading the count with sufficient factual support.

¶ 52    The fact that the circuit court identified *Zeitz* as a template for pleading does not, however, suggest that plaintiffs could simply adopt that template and transform their claim into a sufficient one. A template merely serves as a guide; plaintiffs were still required to remedy the fundamental flaw of their complaint—its conclusory allegations and lack of specificity. Indeed, the factually specific allegations in *Zeitz* were the *reason* the court identified it as a "good template" for plaintiffs to follow. Based on the circuit court's order dismissing the second amended complaint, however, plaintiffs failed to remedy that flaw. In dismissing their repleaded substantive due process claim, the court found that plaintiffs still did not plead sufficient facts, making conclusory allegations and allegations that were contradicted by other, more detailed allegations and exhibits. For instance, the court noted that another nearby development was the same height as the proposed development but had twice the number of residential units, which undermined plaintiffs' argument about the character of the area.[6] Consequently, we cannot find that the circuit court erred in dismissing plaintiffs' claim, even though they "followed" *Zeitz*.

---

[6] Plaintiffs claim that the circuit court erred in considering a Google Maps image of the downtown area of the Village, since it was not attached to their complaint but was attached to the Village's motion to dismiss. In ruling on a section 2-615 motion, a court may consider only (1) facts apparent from the face of the pleadings, (2) matters subject to judicial notice, and (3) judicial admissions in the record. *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25; *Strauss*, 2021 IL App (1st) 191977, ¶ 34. A court may take judicial notice of geographical facts, including information acquired from mainstream Internet sites such as Google Maps. *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶ 49. We therefore find no error in any use of Google Maps to provide a view of the downtown area.

¶ 53 Additionally, we cannot find that the circuit court improperly relied on *Strauss* in dismissing plaintiffs' claim. The circuit court cited *Strauss* twice. The first time was for the proposition that substantive due process challenges are " 'subject to the rational basis test, which provides that a zoning ordinance will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable.' " (quoting *Strauss*, 2021 IL App (1st) 191977, ¶ 39). The second was for the proposition that conclusory allegations are insufficient to state a claim that a zoning ordinance is arbitrary. Neither of these propositions are controversial, and both represent well-settled law. See, *e.g.*, *Napleton*, 229 Ill. 2d at 307 (under the rational basis test, "a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable"); *Paul v. County of Ogle*, 2018 IL App (2d) 170696, ¶ 34 (a pleading that merely paraphrases the elements of a cause of action in conclusory terms is insufficient).

¶ 54 In their briefs on appeal, plaintiffs appear to take issue with the *Strauss* court's comment that, under the rational basis test, a court may hypothesize reasons for legislation even if the reasoning advanced did not actually motivate the legislative action. *Strauss*, 2021 IL App (1st) 191977, ¶ 42. The circuit court, however, did not rely on this language and did not take this approach in analyzing plaintiffs' claim. Instead, the circuit court looked to the actual allegations contained in plaintiffs' complaint and considered whether those allegations were sufficient to state a cause of action. As noted, it concluded that they were not. We therefore cannot find any error in the circuit court's reliance on *Strauss* and affirm the dismissal of count IV of plaintiffs' second amended complaint.

¶ 55                              *Count V: Open Meetings Act*

¶ 56        Finally, plaintiffs claim that the circuit court erred in dismissing count V of their second amended complaint, which alleged violations of the Open Meetings Act. The circuit court found that the relief requested by plaintiffs, namely, voiding the actions taken during the allegedly improper meetings, was not available, as the meetings were not "closed" meetings. Section 3(c) of the Open Meetings Act provides that, where there is a violation of the statute, a court "may grant such relief as it deems appropriate, including *** declaring null and void any final action taken at a closed meeting in violation of this Act." 5 ILCS 120/3(c) (West 2018). Plaintiffs contend that the use of the word "including" means that a court may invalidate actions taken at open meetings, in addition to closed meetings. We do not find this argument persuasive.

¶ 57        Courts have regularly found that the express reference to "closed" meetings in section 3(c) means that the remedy of invalidating the action taken at the meeting is limited only to closed meetings and is not available where the meeting is an open one. See *Board of Education of Waukegan Community Unit School District 60 v. Illinois State Charter School Comm'n*, 2018 IL App (1st) 162084, ¶ 125; *Gerwin v. Livingston County Board*, 345 Ill. App. 3d 352, 358 (2003); *Chicago School Reform Board of Trustees v. Martin*, 309 Ill. App. 3d 924, 936 (1999); *Williamson v. Doyle*, 112 Ill. App. 3d 293, 300 (1983). Plaintiffs point to no case finding otherwise, and we agree that the plain language of the statute limits the remedy to closed meetings. The cases cited by plaintiffs are inapposite, involving either a mix of open and closed meetings (*Roxana Community Unit School District No. 1 v. Environmental Protection Agency*, 2013 IL App (4th) 120825) or meetings that were not truly "open" (*Gerwin*, 345 Ill. App. 3d 352). Here, plaintiffs have not alleged that the meetings at issue were closed; indeed, plaintiffs

acknowledge that the meetings were recorded and available on the Village's website. There is also no dispute that members of the public attended all of the meetings at issue, and were given the opportunity to speak. Accordingly, we cannot find that the circuit court erred in finding that the relief requested by plaintiffs was unavailable and dismissing the claim on that basis.

¶ 58                                                     CONCLUSION

¶ 59        For the reasons set forth above, we affirm the circuit court's judgment in all respects. First, count II of the amended complaint was properly dismissed, as the Village was not required to comply with the Illinois Municipal Code in selling its surplus real property. Second, count III of the amended complaint was properly dismissed, as plaintiffs failed to state a cause of action demonstrating that their procedural due process rights were violated and the evidence in the record showed that the public had the opportunity to participate in the hearings on the zoning issue. Third, count IV of the second amended complaint was properly dismissed, as plaintiffs failed to state a cause of action for violation of their substantive due process rights. Fourth, count V of the second amended complaint was properly dismissed, as plaintiffs sought relief that was unavailable under the Open Meetings Act.

¶ 60        Affirmed.